judgment, that the directors who have failed to file a report are liable for a judgment entered for costs against the corporation, precisely to the same extent as they would be for any debt if the judgment is entered while their default continues. But it is said that the judgment for costs was only an incident of the suit against the corporation, and therefore the plaintiffs should not be permitted to recover it. We can see no force in that suggestion. That it was a debt must be conceded, because it has been so held. That the corporation was liable to pay it is undoubtedly true, and when these facts exist it does not cease to be a debt of the corporation because the corporation has been adjudged to pay that amount in addition to some other amount, when the former amount, which was the principal claim against the company, has been paid. In view of the rule that the statute is to be liberally construed as to what debts are included within it, we think that the learned court below was correct in holding that this judgment for costs, which remained unpaid by the corporation, was within the terms of the statute.

Another objection is that the action was prematurely brought. The report was not filed in January, 1899. The judgment was entered on the 10th of March, 1899. The statute creates a liability for all debts contracted before the report shall be made. That has been construed by this court to include all debts contracted during the year in which the default continues, so that, if the default took place on the 1st of January, 1899, the directors at that time, who continued in office for that year, were liable for all debts contracted during the year 1899. Bank v. Keim, 52 App. Div. 135, 64 N. Y. Supp. 1070. It is claimed by the appellants that the corporation had ceased to do business during the years 1897, 1898, and 1899, and that for that reason they were not called upon to make any reports. There is no question but that the corporation continued to exist during those years, and, that being so, the directors were not relieved of the necessity of making reports. Ginsburg v. Von Seggern, 59 App. Div. 595, 69 N. Y. Supp. 758.

These considerations dispose of all the points made by the appellants which we regard as necessary to examine. The result is that the judgment is correct, and must be affirmed, with costs. All concur.

---

(64 App. Div. 14.)

BAIRD v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. July 23, 1901.)

1. MASTER AND SERVANT—FELLOW SERVANT—INCOMPETENCY.
    Where a collision in which a locomotive fireman is injured results from the failure of the engineer to see a signal, and not from the failure of a servant known by the company to be incompetent to give the proper signal, the company is not liable therefor.
2. SAME—NATURE OF INCOMPETENCY—FORMER ACTS OF SERVANT.
    Where the incompetency of a brakeman arose, not from the fact that he was habitually inattentive to his duties, but because his physical condition was such, from liability to epileptic fits, that he was likely at any moment to be unable to perform his duties, the fact that he had never been guilty of carelessness did not prevent the jury from finding

that he was an improper person to intrust with important duties, when his failure might produce just such results as happened at the time of the accident in·controversy.

3. SAME—NOTICE TO MASTER.

Notice of the incompetency of a servant given to officers of a railroad is notice to the corporation, which will render it liable for an injury to a fellow servant which results from such incompetency, though the officers to whom the notice was given are dead or out of the employ of the company when the injury occurs.

4. SAME.

Where a railroad brakeman is guilty of repeated acts of negligence, the fact that he is not negligent in specific instances called to the attention of the officers of the railroad does not relieve the company from liability for an injury to a fellow servant resulting from the servant's negligence.

5. SAME—DAMAGES.

A railroad fireman, strong and in good health, and receiving a salary of $80 to $90 a month, was permanently and seriously injured in a collision caused by the negligence of the company, which occurred over nine years before the trial. His right arm was rendered practically useless, and he was unable to earn anything for a long time after the injury, and had only earned $2,400 from the injury until the time of the trial, and he was still in need of medical services. *Held* sufficient to sustain a verdict against the company for $11,000.

Appeal from trial term, Onondaga county.

Action by William E. Baird against the New York Central & Hudson River Railroad Company for injuries received while in the employ of defendant. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

Leroy B. Williams, for appellant.

William S. Jenny, for respondent.

RUMSEY, J. The action was brought to recover damages for injuries received by the plaintiff on the 22d of November, 1891. The action was begun on the 22d of October, 1892. It was tried in March, 1895, and a verdict for $4,000 was rendered for the plaintiff. The judgment entered upon that verdict was set aside because of an error in the charge of the court. The case upon that appeal is reported in 16 App. Div. 496, 44 N. Y. Supp. 926. A new trial was had in December, 1900, as the result of which the jury rendered a verdict for the plaintiff for $11,000. A motion for a new trial was made and denied, and judgment entered for the verdict, and this appeal is taken from that judgment and from the order denying the new trial.

The plaintiff was a fireman employed by the defendant, engaged upon an express train running from Syracuse to Albany, leaving Syracuse at 8:10 p. m. The accident occurred between Canastota and Wampsville. The train going east was upon No. 1 track, which is the most southerly of the four tracks of the defendant's road at that place, and is the track ordinarily used by east-bound passenger trains. No. 2 track, which is the one next north, is used by west-bound passenger trains, and No. 3 is the west and No. 4 the east bound freight

track. A freight train also going east had been shifted, for some reason, over upon No. 1 track, upon which the plaintiff's train was running, so that between Canastota and Wampsville the freight was ahead of the plaintiff's train. Just after passing a curve a short distance beyond Canastota, the freight train broke in two; and when that occurred it was the duty of the rear brakeman of the freight to go back at least a half mile with a red light to warn all approaching trains of the obstruction upon the track. The rear brakeman in this particular case was one Sanford E. Brown. The ground of negligence which is insisted upon by the plaintiff is that Brown, the rear brakeman, whose duty it was to take the red light back at least a half mile from the rear of the freight train, did not do it, but took a position only a few car lengths from the end of his train, and so close that the signal, even if seen, would not have enabled the engineer to stop his train in time to avoid a collision. The plaintiff, realizing that the negligence of Brown would not of itself be sufficient to entitle him to recover, takes the further position that Brown was not competent to perform the duties of rear brakeman, and that his incompetency was known to the defendant's officers who had hired him, or that they had such knowledge of his incompetency that they should not have engaged him. The litigated question in the case was whether Brown was incompetent, and whether that fact was known to the officers of the defendant, or should have been known by them. We are satisfied that there was sufficient evidence to warrant the jury in finding that Brown was not a proper man for his position, and that the defendant's officers who hired him knew that to be the fact, or had such information that they should have known that he was incompetent. The only question, therefore, is whether the exceptions taken by the appellant are well taken, and, if not, whether the damages are excessive. The exceptions will be considered in the order in which they are presented in the appellant's brief.

Park, the engineer in charge of the engine of the passenger train, testified that he was on the watch for signals as he came to this curve, and gave a clear statement of the conditions on that night, and the manner he was running, and the efforts he made to ascertain the existence of any signals. He testified with great clearness that there was a mist or fog which extended six or eight feet above the rails; that the steam dome, bell, and sand box on his engine obstructed the view to some extent; that when he had got one-half or one-third of the way around this curve he saw a red bull's-eye light on the rear of the freight train, and a green light close beside it. Before that time he had seen no signal whatever. He said that he knew that the signal seen at that time indicated that there was something on the track with which he was likely to come into collision. He testified that he had his hand on the throttle at the time he saw the signal; that he shut off the steam at once, reversed his engine, put sand on the tracks, which were greasy, and almost immediately, seeing that he was so close that a collision could not be avoided, he jumped from his engine. The defendant, having given evidence tending to show that Brown had given the signal properly, as required by the rules, at the distance which it is conceded would

probably have been sufficient to enable Park to stop his train, insists that the accident was caused by the failure of Park to see the signal given by Brown, and that that failure constituted negligence on his part; that it was the proximate cause of the accident; and, that being so, the plaintiff could not recover, because the accident was caused solely by the negligence of a co-employé. Undoubtedly, if the defendant's premises are correct,—that the signal was given by Brown, and that the accident was caused by the failure of Park to see it as he ought to have done,—then the plaintiff could not recover; but the reason why he could not recover in that case is not because Park failed to see the signal, but because the defendant's employés had done all that they were required to do. That is to say, the signal was given, which for some reason was not seen. The court charged the jury that, if Brown gave the signal at the place required by the rules, the defendant had done all that it was required to do, and under no circumstances could the plaintiff recover. When that charge was made, so that the jury understood, as was clearly proper, that the defendant was not an insurer that the signal should be seen, but was only called upon, in the performance of its duty to the plaintiff, to have the proper signal given, the question of Park's negligence was entirely taken out of the case, and was of no importance.

The question was also submitted to the jury whether or not Brown was an incompetent man for the position of brakeman; the jury being told that, if he were a proper and competent man, the defendant was not liable, whether he gave the signal or not. The incompetency was claimed to arise from the fact that Brown was subject to epileptic fits, the result of which was frequently to put him in such a condition that he was not able to perform the duties of his place. The evidence tended to show that he had frequent attacks, which left him in a stupid and sleepy condition and inattentive to his duties; that this condition had grown upon him to such an extent that it was understood by the men with whom he worked that he was not to be depended upon to do the things which his employment called upon him to perform. Whether that was his condition was a question submitted to the jury. It appears from this that the incompetency of Brown arose, not from the fact that he was habitually inattentive to his duties, but that his mental and physical condition was such that he could not be depended upon to do those things which he ought to do. There being evidence tending to show that the condition of Brown had been brought to the attention of the officers of the defendant who had hired him, the court was asked to charge that if Brown exercised reasonable care, and showed ordinary ability, care, and prudence in the performance of his duties on the defendant's road before the time of this accident, there could be no recovery in the case. This was refused, and an exception taken. Undoubtedly, if the mere question had been whether Brown's incompetency was caused by his carelessness and habitual neglect of duty, the fact that he never had been guilty of carelessness or neglect of duty would have been a perfect answer to the charge. But that was not the point of the plaintiff's claim. That claim was that Brown was in such a mental and physical condition that he was likely at any moment to become un-

able to perform the duties of his employment, as a result of that disease. If that were true, the jury might have found that that condition made him an improper person to intrust with such important duties. The incompetency arose from the fact that he was likely at any moment to be unable to perform his duties; and, therefore, while the fact that up to that time he had not become unable to perform them was very cogent evidence tending to prove that it was unlikely that he would become unable to do so, yet it was only a matter for the jury to consider in that regard, and did not necessarily preclude the plaintiff from recovering when he had made it appear by other proof that Brown might fail at some unforeseen time, when his failure might produce just such results as happened here. The distinction is right here: When the only claim of the incompetency is that the man in question is incompetent because he is careless and reckless and inattentive, the fact that he never has been careless or reckless or inattentive is a perfect answer to such a charge. But where the charge is that he, although in his natural condition a careful and attentive man, is afflicted with a disease the effect of which may at any moment make him incompetent, it is for the jury to say whether it was negligent in the defendant to employ a man in such a condition, although up to that time there had been no failure to perform his duties.

In reply to a request by the plaintiff's counsel, the court charged that notice to an officer of the defendant company was notice to the company, and the defendant could not be relieved from responsibility, so far as the question of actual notice of Brown's incompetency was concerned, by reason of the fact that different men were its officers at different periods of time. The evidence tended to show that Brown was employed at two different times by the company, and that notice of his condition was given to several officers at various times, and that some of these officers were dead, and that none of them had paid any attention to the information. There is no objection to the charge of the court in that matter. The defendant could only act through its officers, and, when notice was given to any of the proper officers of the mental condition of Brown, whatever it was the duty of that officer to do should have been done. Undoubtedly, if it had, Brown would not have continued in the employment of the company any longer; so the question whether the particular person to whom the notice had been given was dead or not was a matter of no importance, because, when that notice was given to any of the officers of the corporation, and it failed to act, it was guilty of negligence in that regard, and was chargeable from that time on with any injury which might result to any one because of such negligence.

We have examined the exceptions to the evidence which are relied upon. They are substantially all of the same character, and amount to complaints that what was said to the different officers of the defendant from time to time was not shown to be true. For instance, it was said that complaint was made to Major Priest, who was a subordinate superintendent having charge of the hiring of Brown, that at one time Brown had been told to flag a train, and had not done it. But there was no evidence when that particular act of neg-

ligence took place. The plaintiff had given evidence of many in-
stances in which it was Brown's duty to flag trains, and he had not
done it. If that were true, when notice of the fact was brought to
the proper official it was his duty to make inquiries to ascertain, not
whether any particular instance was true, but whether the man was
accustomed to perform his duties in the way he should. At least,
the jury might have said that such was the duty of the official.
When, therefore, it appeared that Brown was generally in the habit
of failing to flag trains, it was sufficient to warrant the jury in com-
ing to the conclusion that the defendant had notice of the fact that
Brown was not a man to be relied upon to perform his duties, if its
officers were told so, whether in any particular case the complaint
was well founded or not.

There were other exceptions, which we do not regard as material;
and the result is that there was no error committed to the prejudice
of the defendant, and that the case was properly submitted to the
jury.

The only other question is the question of damages. This injury
occurred in 1891,—almost 10 years ago. The plaintiff recovered a
verdict of $4,000 in 1895. The present verdict was $11,000. The
injuries are exceedingly serious. There is no dispute but that they
will be permanent. The defendant gave no evidence tending in the
slightest degree to explain or contradict the evidence of the plain-
tiff's witnesses in that regard. His right arm was rendered practi-
cally useless. The bone was split; a portion of the head remaining
in the socket joint, and the remainder thrown out, so that it could
not be replaced; and there was a compound fracture, which required
that a portion of the bone be taken out. Since the time of the ac-
cident he has been able to do very little. For months after the ac-
cident he could do nothing. After a time he obtained employment as
a commercial traveler, but was not able to do very much in that re-
gard, and for a long time his efforts resulted in losing money, instead
of making it. He was a strong, healthy man at the time he was hurt.
He had been four years upon the railroad, and was receiving from
$80 to $90 a month. It may fairly be assumed that he was in the
line of railroad promotion; but, admitting that he was not, the wages
he was receiving, if continued from that time down to the present,
would have amounted to about $9,800. The entire amount he has
been able actually to earn is $2,400. It does not appear how much
his doctor's bills were, but it is quite clear that they must have
amounted to a considerable sum. Indeed, the necessity of employing
a physician on account of this accident has not yet entirely ceased.
But it is evident that his actual money loss has been something over
$7,300. It is quite clear that he will never be able to earn any con-
siderable amount of money. It is to be remembered that the inju-
ries were received nine years before the time of the last trial, and
that during all that time he has been a serious sufferer; that he will
never recover; and that we have absolutely an accurate notion of
the amount of his actual damages down to the time of the trial.
We think, therefore, taking everything into consideration, that the
verdict for $11,000, which is all that he will ever receive as compen-

sation for his loss of earning power, for his many years of pain and suffering, and the expenses of the trials, is not too great, and that it would not be a proper exercise of our discretion to set aside the verdict, particularly as the trial judge did not see fit to do so.

The judgment and order appealed from should therefore be affirmed, with costs. All concur, except WILLIAMS, J., not voting.