Buffalo Trust Company, Appellant, v. Producers Exchange No. 148, California, Missouri, Respondent.*

Kansas City Court of Appeals. January 6, 1930.

*Corpus Juris-Cyc. References: Bills and Notes, 8CJ, section 266, p. 156, n. 62; section 581, p. 393, n. 11: section 1339, p. 1026, n. 92; section 1371, p. 1060, n. 32; Corporations, 14aCJ, section 2209, p. 347, n. 30; section 2212, p. 349, n. 48; section 2221, p. 360, n. 45; section 2241, p. 387, n. 40; section 2254, p. 404, n. 88; section 2257, p. 408, n. 24; Evidence, 22CJ, section 592, p. 493 n. 7; section 1294, p. 1011, n. 48.

*Meservey, Michaels, Blackmar, Newkirk & Eager* and *Robert E. Colebird* for appellant.

*Ruby M. Hulen* and *Embry & Embry* for respondent.

BOYER, C.—This case is an action to recover on two trade acceptances. For convenience, the parties will be referred to as plaintiff and defendant. The plaintiff is a banking corporation located at Buffalo, New York. The defendant is a Missouri corporation with its home office and place of business at California, Missouri, and at all times in question was engaged in buying and selling poultry, eggs, feed, grain, flour, fertilizer, and automobile tires. The Wayne Tire & Rubber Company, a corporation, was engaged in business at Buffalo, New York, and on occasions sold tires to the defendant. The Montford Rubber Company, Inc., was its sales agency.

The petition is in two counts and based upon two trade acceptances or bills of exchange alleged to have been executed by the defendant and discounted, in due course, by plaintiff. The first count alleges that the Wayne Tire & Rubber Company on the 14th day of

February, 1924, executed its trade acceptance and bill of exchange directed to defendant and requested said defendant to pay to the drawer of same or its order $114.36 on May 5, 1924; that defendant duly accepted said bill of exchange and trade acceptance on February 14, 1924, in writing upon the face of said bill and acceptance, whereby defendant engaged to pay the same at maturity at California State Bank in California, Missouri; that thereafter and for valuable consideration and before maturity, plaintiff became and was the owner thereof and demanded payment upon maturity which was refused. The second count is to the same effect and is based upon an alleged trade acceptance and bill of exchange dated March 27, 1924, payable on June 4, 1924, for the same amount. Plaintiff prayed judgment for the amount of the bills, with six per cent interest from maturity of each. The trade acceptances recite that the obligation of the acceptor arises out of the purchase of goods from the drawer; and bear on the face thereof an acceptance under the respective dates of February 14, 1924, and March 27, 1924, over the purported signature of defendant; the first one being signed, "Producers Exchange 148, by W. W. Walker, Mgr.;" and the second one, "Producers Exchange No. 148. By W. W. Walker, Manager."

The defendant filed a verified answer to both counts of the petition consisting of a general denial and a further plea of *non est factum;* and alleges that defendant did not sign and deliver the trade acceptances described in the petition, and that defendant did not authorize or empower any person so to do; and further, that said bills of exchange or trade acceptances are wholly without consideration; and that defendant did on the 14th day of February 1924, and on the 27th day of March, 1924, give the Wayne Tire & Rubber Company an order to ship a quantity of tires to it at its place of business in California, Missouri, and that if the bills of exchange or trade acceptances described in the petition profess to provide that the obligation of the acceptor arises out of the purchase of goods, defendant states that it has received no goods from the Wayne Tire & Rubber Company.

The evidence favorable to plaintiff tended to show that plaintiff purchased the trade acceptances in due course; that plaintiff was the owner thereof and that same are unpaid; that plaintiff acquired the acceptances directly from the Montford Rubber Company which was a separate corporation and the sales agency of the Wayne Tire & Rubber Company; that the Wayne Tire & Rubber Company, by its president, endorsed the acceptances and delivered them to the Montford Rubber Company; that the Montford Rubber Company endorsed said acceptances by its treasurer, and received credit for the net amount of said acceptance in its bank account maintained in plaintiff's bank, and checked out all of said money. The first

trade acceptance was discounted by the plaintiff on February 20, 1924, and the second one was discounted by plaintiff on April 16, 1924. Plaintiff became owner of them on said dates and was such owner at the time of the institution of this suit.

The evidence shows that plaintiff is a banking corporation located and transacting business at Buffalo, New York, and that defendant is a Missouri corporation engaged in operating a store or place of business at California, Missouri; that at the time of the purchase of the acceptances plaintiff was assured that the goods for which they were given had been shipped, and that plaintiff had no knowledge or information to the contrary until after the acceptances had been purchased and paid for and the proceeds therefor checked out by the Montford Rubber Company.

The evidence shows that the board of directors of defendant on the 25th day of June, 1923, by resolution, employed W. W. Walker as manager for its company, and from that time until the time of trial said Walker was the manager of defendant, in charge and control of all of its property and the conduct of its business; that he bought and sold all of the merchandise and produce handled by said company; that he was authorized to collect all accounts, sign checks and receipts for the company, and that all checks issued against the funds of the company were issued by him or under his supervision and direction.

Mr. Walker testified that he was the manager for the defendant; that he signed the acceptances, and that he wrote the name, Producers Exchange, or stamped it on the trade acceptances; that he held the stamp for his house; that the trade acceptances were in the form that they appear when he signed them; that the instruments were a part of what he signed; that he had charge of the store; that he bought and sold the merchandise for the defendant; that on one occasion he signed notes for defendant to a bank when the bank was specifically authorized to make the loan; that he could hardly say how many times he had signed notes at the bank, and, over the objection of plaintiff, that he had been directed to do it by the board; he further testified that he also purchased feed and fertilizer and that these usually came with sight draft or draft attached to bill of lading; they were purchased in St. Louis and usually paid for by sight draft or arrival draft; that "he bought fertilizer on a credit—on a contract rather than on a credit;" that he or the bookkeeper under his direction issued all checks; that purchases were paid for in cash for amounts of $25 or $50, but above that amount were paid for by check; that the time these trade acceptances were signed, he signed three; that he may have signed other acceptances; that he was acquainted with some of the officials and representatives of the Wayne Tire & Rubber Company; that he prepared and presented to the board of directors a report of the resources and

liabilities of the Producers Exchange No. 148 for the month ending August 31, 1923. Among the liabilities listed in this report was an item of $103.14 due the Wayne Tire & Rubber Company; that he thought this amount was due on a prior trade acceptance which had been signed by "our previous manager." And on cross-examination, said it was an outstanding indebtedness, but that he did not recall whether it was a trade acceptance, and that he had bought tires from the Wayne Tire & Rubber Company without trade acceptance. And over plaintiff's objection, he testified that he never received any *express* authority from the board of directors or the president or any of the officers, directing him to accept trade acceptances or execute any negotiable instruments, and that he never received the tires on these trade acceptances.

The secretary for the defendant company identified the minutes of the board of directors and its by-laws. The minute authorizing the employment of Mr. Walker as manager was placed in evidence, as well as a portion of the by-laws. This witness further testified that he had read over the minutes from January, 1924, and that they did not contain anything showing that the board had instructed Mr. Walker not to sign trade acceptances, and that there was nothing in them prohibiting him from signing them. This testimony was offered and admitted over the objection of defendant. One of the by-laws directs, *inter alia,* that the board shall employ a manager who shall have supervision and management of the business of the corporation, subject to the expressed will of the board of directors and the shareholders. That it shall be the duty of the manager to have general oversight and control over the business of the company, subject, however, to the board of directors. He shall attend to the buying and selling of all commodities the company may see fit to handle and shall collect all accounts due the company and "sign all checks, receipts." That he shall keep accurate records and books of all transactions, deals and business of the company and a copy of all correspondence, and preserve all books, contracts, papers, statements, and documents pertaining to the business of said company and exhibit the same to the directors whenever they may call for them, and shall file with the board at their monthly meeting, a full and complete report of all business transaction during the preceding month; that "he shall not trade or deal in futures in grain or other commodities on any board of trade, either in his own name or the name of any other person or persons, or in the name of this corporation (except as may be hereinafter provided with reference to hedging)."

Defendant offered no evidence, and at the close of plaintiff's case the court, at the request of defendant, directed the jury to return a verdict for defendant on both counts of the petition. The verdict

was returned and judgment entered accordingly. Plaintiff duly appealed, and assigns as error the action of the court in giving the peremptory instruction for defendant.

## Opinion.

Under the evidence in this case we are of the opinion that plaintiff was entitled to go to the jury upon both counts of its petition and that the learned trial court erred in directing a verdict for defendant. The principal question briefed and argued relates to the authority of Walker, as defendant's manager, to bind defendant by the execution of the trade acceptances in its name, under the circumstances shown in evidence.

The plaintiff contends that the act of the manager in accepting the bills of exchange was within the scope of both his real and apparent authority; that his authority could reasonably be inferred from the facts and circumstances and, in effect, that the act of the manager was the act of the corporation which he represented. This contention and position is supported by reason and the authorities hereinafter mentioned. The defendant contends that the manager had no authority to accept the bills and that the signature of defendant by the manager is a signature by "procuration," which was a notice to plaintiff that the manager had but limited authority and that was executed with authority so to do.

In a consideration of the questions as to whether the trade acceptances were agreed to be paid and accepted by an "agent" of the corporation or by the corporation itself, it is well to keep in mind the distinction between the acts of a natural person who may act thru an agent, and the acts of a corporation which of necessity are accomplished thru some "agency" which is inherent in the body corporate. Corporate functions must be performed thru the instrumentality of some agency, but not necessarily by or thru an agent; and when the company does not go outside its corporate capacity in doing an act it is a confusion of terms to say that it is acting thru an agent when the fact is it is acting thru an agency, and in chief. This subject is pointedly discussed and the differentiation succinctly stated in the case of American Soda Fountain Company v. Stolzenbach, 75 N. J. L. 721, 726, wherein it is said:

"This distinction is not merely verbal, and hence trivial, but on the contrary, marks the wide difference that exists between acting for oneself by an inherent faculty and the employment of another person to act for one and in one's stead. In this, as in all cases, loose terminology implies and conduces to loose reasoning. The maxim *qui facit per alium facit per se* requires and should be applied only when the agent, the *alius*, is not the principal acting for himself."

Defendant relies upon section 808, Revised Statutes 1919, applicable to signatures by ''procuration'' and insists that it applies to the case in hand; that the signatures to the acceptances in question were by an agent and were in fact signatures by ''procuration'' and therefore plaintiff was required to show that the person purporting to sign did so within the actual limits of his authority. We think it apparent that this section has no application to the instant case, first, because it is plain that the signatures were not by ''procuration,'' and second, that the section is not intended to apply to a corporate act executed thru the agency of its manager. The case of Paxston v. Gillam-Jackson Loan & Trust Company, 221 Mo. App. 1101, 297 S. W. l. c. 123, relied upon by defendant, is not authority for this contention. This section of the statute is merely referred to incidentally in connection with the preceding section as applicable to the relationship of one natural person to that of another natural person acting as the other's agent or in a representative capacity. The section of the statute is as follows:

''Sec. 808. Signature by Procuration.—A signature by 'procuration' operates as notice that the agent has but a limited authority to sign, and the principal is bound only in case the agent in so signing acted within the actual limits of his authority.''

It will be noted that the word ''procuration'' is enclosed in quotation marks, and we interpret it to mean that if the words ''per procuration'' or ''by procuration'' are added to the signature of a person signing the instrument as agent, it then operates as notice that the agent has but a limited authority and that the principal is bound only in case such agent acts within the scope of his actual authority. This statute is evidently borrowed from ancient law growing out of the uses and customs of merchants in dealing with negotiable instruments when executed by one person for another, whose authority is presumed to rest upon some written instrument, to act as the agent for another, and whose signature to the instrument is followed by the words, ''per procuration'' or ''by procuration'' or by abbreviations thereof. This method of signing is archaic and, in this modern day, is not in current use. No case is called to our attention in which the statute is construed in the manner defendant claims it should be construed.

The term ''by procuration'' is used sometimes in England in signatures, but it is seldom, if ever, used in this country. [8 C. J. page 156, sec. 266.] In Eaton & Gilbert on Commercial Paper, page 98, sec. 29, is the following expression in reference to this character of signature.

''A signature by procuration is a technical one seldom used in this country. The signature is ordinarily in the following form: ''A. (agent) per proc. or p.p. B. (principal).'' It is notice to all

persons of the limits of the agent's authority and in that respect differs somewhat from the cases of ordinary agency, when an instrument is sought to be enforced by a bona-fide holder for value and without notice.''

In 1 Daniel on Negotiable Instruments (6 Ed.), 366, sec. 280, is the following:

''. . . that whenever an authority purports to be derived from a written instrument, or the agent signs the paper with the words ''by procuration,'' in such a case the party dealing with him is bound to take notice that there is a written instrument of pro curation, and he ought to call for and examine the instrument itself to see whether it justifies the act of the agent. . . . But no such duty exists to make inquiry respecting private instructions to the agent from his principal, whether written or oral, for they may well be presumed to be of a secret and confidential nature.''

In Bigelow on Bills, Notes and Checques (3 Ed.), 113, sec. 172, is the following:

Where it is desired to bring home notice to the payee and subsequent holders that the agent is acting under a limited authority, the custom is for the agent to add to his signature the phrase ''by procuration,'' or ''per proc.'' Such addition puts all parties on notice of the limited authority of the agent.''

Quoting from 6 Words and Phrases, 5652:

''Procuration. Mandate is a consensual contract by which one of the parties confides the carrying on or execution of one or more matters of business to the other, who takes them in his charge. Mandate has also the name of procuration; but the word ''mandate'' is more general, and comprehends every power given to another, in whatsoever mode it be, whilst procuration supposes a power given by writing. [Williams v. Conger, 8 Sup. Ct. 933, 946, 125 U. S. 397, 31 L. Ed. 778.]

It is obvious that the acceptances in this case were not signed ''by procuration,'' and it is likewise obvious that the acceptance of a bill by the manager of a corporation is not, strictly speaking, an acceptance by an agent, but more properly the acceptance of the corporation itself thru an agency inherent in its existence and operation. It is evident that it was never intended by the statute to place a hurdle in the path of corporate business such as to require a person dealing with the manager of a corporation to inquire and ascertain whether he has written authority as an agent of the company to perform the specific act, which in the usual course of business, he assumes to perform for his company.

In this case there was no instrument of writing between defendant and its manager appointing him its agent, and prescribing the limits of his authority for any specific purpose; and the evidence shows clearly that in the acceptances signed by the manager they

were not signed, or intended to be signed, by procuration, but were signed as constituting the act of the corporation itself. Unless the person purporting so to sign was not in fact the manager of the company for which he assumed to act, and was not acting at the time within the limits of his actual or apparent authority as manager of the company in the usual course of its business, then the defendant is bound by his acceptances in its name. It is uncontroverted that he was the manager of the defendant, duly appointed by the board, in complete control and management of its affairs and thereby vested with all of the authority and power incident to the exercise of his duties as such officer. It is observed that a manager of a company possesses the most general and inclusive powers possessed by any officer of a corporation, and that unless his authority is specifically restricted it is co-extensive with the powers of the corporation itself, and he has authority to do any act in its behalf which is usual and necessary in the ordinary course of the company's business, or which he is held out to the public as having authority to do. The fact that he occupies the position of manager implies his authority to do anything that the corporation itself may do, so long as the act done pertains to the ordinary business of the corporation. [14A C. J., page 359, sec. 2221; Robinson v. Moark-Nemo Consolidated Mining Co., 178 Mo. App. 531, 539; Concrete & Steel Const. Co. v. National Asphalt Refining Co., 2 S. W. (2d) 157.]

The evidence in this case shows that defendant bought and sold automobile tires; that it purchased tires on different occasions from the drawer of the acceptances, and the jury might find under the facts in evidence that on one occasion, at least, prior to the appointment of the last manager of the company, his predecessor as manager purchased tires in the same manner that they were purchased by the present manager; that is, upon a trade acceptance. The report of the condition of the business of defendant prepared by manager Walker shows this previous outstanding liability to the Wayne Tire & Rubber Company long prior to the purchase made and the signing of the acceptances by manager Walker. The evidence also shows that manager Walker purchased on account, or contract, other material and merchandise, such as feed and fertilizer, which were paid for, as he said, by sight drafts, or arrival drafts accompanying bills of lading. It would be a fair inference that these sight drafts were accepted and paid by manager Walker, and that his transactions were reported to the board of his company. The evidence also shows that the board had authorized him to execute promissory notes at the bank; that he issued all checks for the company, made collections, gave receipts for same, handled the bank account for defendant, and bought and sold all merchandise handled by the company. The fact that he was authorized to buy would imply authority to pay for his purchases. From a

long course of dealing, and the manner in which the business of defendant was conducted by its manager, his authority to purchase automobile tires, and to sign trade acceptances therefor may be reasonably inferred by a jury from the facts in evidence. A corporate entity cannot clothe its manager with apparent authority and as to third persons object to the exercise of that authority. [Fink v. Gregg Realty Co., 296 S. W. 838, 839 and cases cited; Sparks v. The Dispatch Transfer Co., 104 Mo. 513; Magnolia Compress & Warehouse Co. v. St. Louis Cash Register Co., 201 Mo. App. 201, 207.] It is our conclusion upon this phase of the case that there was substantial evidence that the manager of the company acted not only within the apparent scope of his authority, but within the limits of his actual authority in signing the trade acceptances.

But defendant says that the representative of the tire company did not know the facts, at the time the acceptances were signed for goods sold, and therefore could not rely upon implied authority arising from a course of dealing. However, evidence of the course of dealing by defendant's manager is competent to show the capacity in which he had acted, and his authority to do said acts, as a link in the chain of circumstances to establish his authority, whether said previous acts were known or not known to the drawer of the bills. [Bennett v. Potashnick, 214 Mo. App. 507, 513; Bonner v. Lisenby, 86 Mo. App. 666; Hefferman v. Boteler, 87 Mo. App. 1. c. 322; 1 Mechem on Agency (5 Ed.), sec. 717, page 506.]

Defendant further insists that plaintiff must fail in this case because it did not prove the endorsements on the acceptances by evidence *aliunde* the endorsements. The trade acceptances, with the endorsements thereon, were introduced in evidence and show that the Wayne Tire & Rubber Company drew them over its signature signed by H. T. Auerbach. The endorsement on the back of the acceptances is Wayne Tire & Rubber Company, H. T. Auerbach, Pres. The signature of H. T. Auerbach attached to said endorsement was established, with the fact that he was an officer of that company, and inasmuch as the acceptances were drawn by the same person, the Wayne Tire & Rubber Company would not be permitted to deny the signature of endorsement which is the same as the signature of the drawer of the bill. If this person had authority to draw the bill, he certainly had authority to endorse it. The evidence shows that these acceptances were delivered by the Wayne Tire & Rubber Company to its sales agency, the Montford Rubber Company, Inc., and the latter's endorsement was placed thereon by L. B. Dietz, Treas.; the signature and official capacity were shown; it sold them to the bank and received the money therefor, after which time it would not be in position to deny the endorsement upon the acceptances in whatever manner made.

Defendant says that the record shows that there were other endorsements upon the acceptances which were not proved. There is no evidence that there were any other endorsements upon the acceptances. But defendant refers to the petition, and the exhibits thereto attached, wherein the endorsements are recited, and at the end of which it is stated: "Other endorsements are illegible." The acceptances and the endorsements thereon were received in evidence. No other endorsements appear. Defendant did not object because they were not the acceptances sued on, or because there were other endorsements not proved. The variance between the petition and proof, if any, was waived. The bill of exceptions contains no evidence of other endorsements upon the acceptances and the point must be ruled against respondent.

In contemplation of a new trial, we deem it proper to make our observations upon the admissibility of certain testimony, although the admission of such testimony has not been specifically assigned as error by appellant. Mr. Walker was permitted to testify, over the objection and exception of plaintiff, that he had never received any express authority or direction from the board of directors, or the president, or any of the officers, directing or empowering him to accept trade acceptances or execute any negotiable instruments. This was objected to on the ground that it was not calling for the best evidence and as asking for a conclusion of the witness. We think the objection should have been sustained. The witness was not qualified to testify to any *express* authority which he may have received from the directors. The best evidence of such authority would necessarily be the records of the board. We also think that it called for the conclusion of the witness instead of for the facts. The same witness was permitted to testify, over the objection of the plaintiff, that he never received the tires ordered and for which the acceptances had been issued. Under the evidence in this case, showing plaintiff a holder in due course, we think that this testimony was clearly immaterial and prejudicial and should not have been admitted in evidence. There is no showing or attempted showing that the holder had any knowledge of any infirmity whatever in the acceptances which it purchased, and the evidence of the witness to the effect that the goods for which the acceptances had been issued had never been delivered could have no other than a highly prejudicial effect. It is also noted that the secretary of the company was permitted to testify, over the objection of defendant, that he had read over the minutes of the corporation from a certain date and that they did not contain anything showing that the board had instructed Walker not to sign trade acceptances, and that there was nothing in them prohibiting him from signing them. Such testimony is not the best evidence and under proper objection should not have been admitted. It is obvious that the minutes of

the company are the best evidence of what they contain and that it is not permissible to allow a witness to testify as to what they contain or do not contain. We find and hold that there was sufficient competent evidence in this case to require its submission to the jury, independent of that to which objection was made. Any errors in respect to the introduction of evidence will no doubt be avoided upon a retrial.

From the conclusions reached it results that the judgment should be reversed and the case remanded for a new trial. The Commissioner so recommends. *Barnett, C.,* concurs.

PER CURIAM:—The foregoing opinion by BOYER, C., is hereby adopted as the opinion of the court. The judgment is reversed and the cause remanded. All concur, except *Trimble, P. J.,* absent.