248 S.W.2d 66 (1952)
BEETSCHEN et al.
v.
SHELL PIPE LINE CORP.
No. 28283.
St. Louis Court of Appeals. Missouri.
February 19, 1952.
Order to Transfer March 14, 1952.
*68 Charles M. Spence, Harold I. Elbert, St. Louis, Thompson, Mitchell, Thompson & Douglas, St. Louis, of counsel, for appellant.
Henry C. Stoll, St. Louis, Joseph Nessenfeld, St. Louis, of counsel, for respondents.
HOUSER, Commissioner.
This is an action against Shell Pipe Line Corporation for damages claimed to have been sustained by the owners of a lot in the *69 City of St. Ann, St. Louis County, occasioned by the building and maintenance of a fence. A circuit court jury awarded plaintiffs $157.50 actual and $2,750 punitive damages. The pipe line corporation has appealed to this court, contending that plaintiffs and the court below misconceived the nature of this action as well as the proper amount of damages.
Plaintiffs' petition originally sought damages for the permanent appropriation of the right to fence. Approximately one month before going to trial plaintiffs amended their petition, alleging the erection of the fence "in violation of plaintiffs' property rights, depriving plaintiffs of the use of the rear ten feet portion of the lot", depreciation of and damage to plaintiffs' property and the use and enjoyment thereof by reason of the trespass, disturbance of the peaceable and quiet use and enjoyment of the property and that the actions of the defendant were "wilful, malicious, unlawful and in reckless disregard of plaintiffs' rights", praying for actual and punitive damages. By its answer the pipe line corporation admitted the erection and the continued maintenance of the fence and conceded that in a condemnation proceedings in federal court in 1928 it had given up the right to fence said easement, but claimed that the fence was permanent and that the plaintiffs must recover all of their damages in one action.
These are the salient facts: In a condemnation suit filed in federal court in 1928 defendant acquired a right of way 20 feet wide for a crude oil pipe line over what was then open farm land in St. Louis County but which recently has been sold off in lots and developed into a populous area. In the federal court proceeding the original petition was drawn in such manner that the company would have acquired not only subsurface rights but surface rights as well, including the right to fence. By way of amended petition, however, the condemnor reserved to the property owners the right to use and cultivate the surface of the strip, and expressly waived any right to fence the right of way, thereby obtaining only the subsurface right to install and maintain an underground pipe line and the right to re-enter the land solely for the purpose of maintenance and repair.
In 1948 the company determined that it was necessary to fence a portion of its right of way in the City of St. Ann for several hundred feet, including that part which constitutes the rear 10 feet of plaintiffs' lot. Counsel for the pipe line corporation investigated, saw the original (but not the amended) petition in the 1928 condemnation proceedings, and rendered an opinion that the company had the right to fence its easement. In the first part of December, 1949 without any prior notice to the property owners the fence was constructed at the boundary line of the easement, across the plaintiffs' lot, upon a line 10 feet north of the south boundary line of plaintiffs' property. The fence is of heavy steel wire 6 feet in height with a 12 inch angle arm designed for three strands of barbed wire. The posts are set in concrete. It is conceded by the pipe line corporation that no condemnation proceedings were instituted in 1948 to procure any further surface rights or the right to fence, and that plaintiffs have not granted the defendant any such rights.
On this appeal the pipe line corporation says that plaintiffs have only one action for the appropriation of the right; that plaintiffs must recover all their damages in the one action; that they cannot split their cause of action and recover in successive actions on the theory of a continuing injury; that respondents originally sued for a permanent appropriation of the right to fence, acquiesced in the taking, waived their right to have compensation assessed in advance, and at the last minute amended their petition to count on a theory of temporary trespass; that the measure of damages is the difference between the reasonable market value of the property before and after the appropriation of the right to fence (i. e. actual and not punitive damages); that this is a "reverse condemnation suit", i. e. a taking or appropriation of the right to fence by a corporation possessing the power of eminent domain; that in acquiring the right by trespass it damaged plaintiffs no more than if it had condemned the right in proper proceedings in *70 circuit court; that plaintiffs have been deprived of nothing except the right to have compensation paid before the seizure of the right; that the same measure of damages applies here that applies in condemnation proceedings; that R.S.Mo.1949, § 523.090, limits the damages to actual damages and excludes any element of punitive damages; and that there is no showing of any intentional doing of a wrongful act without just cause or excuse.
Contra, plaintiffs claim that they have pleaded and proved a temporary, abatable, continuing trespass in which they may recover both actual and punitive damages, and that they may maintain successive actions so long as the fence remains on the property; that diminution in the rental value of the premises represents the actual damages recoverable and that punitive damages may be awarded because there is legal malice coupled with wilful, admittedly wrongful trespass.
Granting that appellant could have obtained the surface rights, including the right to fence, in the original condemnation proceedings in 1928, or by the institution of condemnation proceedings in 1949, the fact remains that it did not do so, but on the contrary committed an act which it now acknowledges to have been a trespass. While conceding that it is a "technical" trespasser, appellant claims that it cannot be held to the same rule that governs trespassers generally. We rule, however, under the facts disclosed here, that a private corporation, invested by law with a portion of the sovereignty of the state in its grant of the power to exercise the right of eminent domain, is not thereby clothed with an immunity not possessed by others who trespass upon the property or rights of private citizens, and must answer for its trespasses in the same manner as any other trespasser. The statute, R.S.Mo. 1949, Chapter 523, § 523.010 et seq., gives the corporation the right to acquire rights in the property of private citizens by instituting condemnation proceedings according to a prescribed formula. Under the Constitution of 1945, Art. I, Section 26, private property cannot be disturbed nor can the proprietary rights of the owner therein be divested until the damages are ascertained and paid to the owner or paid into court for the owner. A corporation which ignores the statute and the Constitution and makes an entry upon the land of a private citizen without agreement with the owner or without having the damages appraised by commissioners is guilty of a wilful trespass. Cox v. St. Louis, M. & S. E. R. Co., 111 Mo.App. 394, loc. cit. 408, 85 S.W. 989.
In such case the aggrieved property owner has an election of remedies. He may proceed by way of injunction to restrain the installation, MacMurray-Judge Architectural Iron Co. v. City of St. Louis, 138 Mo. 608, 39 S.W. 467; Carpenter v. City of St. Joseph, 263 Mo. 705, 174 S.W. 53; or he may sue in ejectment, Tooker v. Missouri Power & Light Co., 336 Mo. 592, 80 S.W.2d 691, 101 A.L.R. 365; or he may avail himself of R.S.Mo.1949 § 523.090; or he may maintain a common law action for damages. 30 C.J.S., Eminent Domain, § 394, page 105.
If he sues for damages, he may in a proper case proceed upon the theory of trespass and sue for actual damages, 30 C.J.S., Eminent Domain, § 400, page 118, and when the facts warrant it recover punitive damages, or he may waive the tort and sue for the compensatory damages to which he would have been entitled if condemnation proceedings had been instituted prior to the entry. Doyle v. Kansas City & S. R. Co., 113 Mo. 280, 20 S.W. 970; Webster v. Kansas City & S. R. Co., 116 Mo. 114, 22 S.W. 474, loc. cit. 475.
If he sues for the just compensation preserved to him by the Constitution for the taking of private property for public use, his theory is that of acquiescence in the taking, consent to the appropriation, and in that event he has but one action, in which he must recover all damages, past, present and prospective. Upon the payment of the judgment in such case the same right in the land is conferred upon the corporation as if it had condemned the land formally. Doyle v. Kansas City & S. R. Co., supra.
*71 In support of its contention that this is a "reverse condemnation" suit and that plaintiffs have waived the tort and sue only to enforce their constitutional right to just compensation, appellant cites the following cases: McReynolds v. Kansas City, C. & S. R. Co., 110 Mo. 484, 19 S.W. 824; Cochran v. Missouri, K. & T. R. Co., 94 Mo.App. 469, 68 S.W. 367; Webster v. Kansas City & S. R. Co., supra; and Miller v. St. Louis & K. C. R. Co., 162 Mo. 424, 63 S.W. 85. These cases, however, are not controlling here for the reason that in all of them the defendant corporation entered the land and made a permanent appropriation, and the landowner sued for the value of the right of way or other interest taken on the theory that he had been permanently deprived thereof. In none of the cases cited did plaintiff sue on the theory of temporary trespass for actual and punitive damages. True enough, when the structure is permanent in its character and the appropriation of the right is permanent, or where the injury flowing from the installation is permanent, the cause of action accrues once and for all and the entire damages must be assessed in one action. In the case at bar, however, plaintiffs have not sued on any such theory. On the contrary, plaintiffs have specifically counted upon wilful, malicious and unlawful trespass in reckless disregard and violation of plaintiffs' property rights, giving rise to successive actions for temporary, continuing trespasses. In adopting the theory of trespass plaintiffs do not acknowledge the right of the corporation to appropriate, nor do they acquiesce in the appropriation. On the contrary they protest the taking, deny the rights of the trespasser, and bottom their pleadings, proof and instructions upon the theory of damage to the use of the property, and not on diminution of the market value of the property as a whole, arising out of a permanent appropriation.
The fact that plaintiffs originally framed their petition on the theory of permanent appropriation, in which status the petition remained for nearly a year, did not commit them irrevocably to that theory. They had the right to amend, and did amend, abandoning that theory, and proceeded to trial as for a temporary trespass. These facts constitute no acquiescence or waiver, as appellant claims.
Where the character of the trespass is such that it need not be permanent the landowner may maintain successive actions for the continuation of the trespass, each day giving rise to a fresh cause of action. Doyle v. Kansas City & S. R. Co., supra, 113 Mo. loc. cit. 286, 20 S.W. 970; 63 C.J. Trespass, §§ 252, 253, p. 1051. If a trespassing corporation which has the power of eminent domain finds successive trespass actions burdensome it may bring an end to such litigation by acquiring the right properly through the institution of condemnation proceedings.
Appellant has consistently maintained that the erection of the fence was a permanent appropriation of the right to fence. The cases which appellant cites in support of the proposition that plaintiffs may not split their cause of action but must sue and recover all damages in one action, Tooker v. Missouri Power & Light Co., supra; McReynolds v. Kansas City, C. & S. R. Co., supra; Smith v. City of Sedalia, 244 Mo. 107, 149 S.W. 597; Langenberg v. City of St. Louis, 355 Mo. 634, 197 S.W.2d 621; De Geofroy v. Merchants' Bridge Terminal R. Co., 179 Mo. 698, 79 S.W. 386, 64 L.R.A. 959; Martin v. Chicago, S. F. & C. Ry. Co., 47 Mo.App 452; Tegeler v Kansas City, 95 Mo.App. 162, 68 S.W. 953, all involve a structure of a permanent charactera permanent improvement, resulting in a permanent injury to the inheritance so that the whole damage could be estimated in one action. In this case the fence is not necessarily permanent. The fence may be removed and the land restored to its former condition without in any wise interfering with the crude oil flowing through the pipe line. As stated in 18 Am.Jur., Eminent Domain, § 385, p. 1030: "* * * but if no permanent structure has been erected and the injury can be remedied at reasonable expense without interfering with the public use for which the taking has been made, a claim for the assessment of permanent damages cannot be sustained." And, as said in *72 Dietzel v. City of New York, 218 N.Y. 270, 112 N.E. 720: "There is no presumption that the trespasser will persist in his wrongdoing in such a case, but, on the contrary, the plaintiff's damages are to be assessed on the assumption that he will right the wrong, and, therefore, they are limited to the injury which the plaintiff has sustained up to the time of the commencement of the action. (Citing cases.) A recovery on the basis of permanent damage is not permissible in a common-law action for a trespass upon land unless the injury is incapable of actual, physical repair, and therefore in its nature and of necessity permanent."
See also Porter v. Kansas City & N. Connecting R. Co., 103 Mo.App. 422, loc. cit. 431, 77 S.W. 582; and the following suits for damages for nuisances, in which it is held that when a nuisance is not permanent but may be abated or removed, permanent damages are not properly allowed: Schoen v. City of Kansas City, 65 Mo.App. 134; Carson v. City of Springfield, 53 Mo.App. 289; Givens v. Van Studdiford, 86 Mo. 149, loc. cit. 159; Bielman v. Chicago, St. P. & K. C. R. Co., 50 Mo.App. 151; Pinney v. Berry, 61 Mo. 359, loc. cit. 367.
Another factor which distinguishes the Tooker, McReynolds, Smith, etc. cases, supra, from the case at bar is the fact that in each of those cases the public convenience and welfare was involved; the right appropriated was indispensable for the original installation of a public utility providing the general public with new, beneficial facilities such as electric power transmission lines, railroads, water mains, etc., whereas the case at bar does not involve the appropriation of land for the purpose of installing and operating a public utility. That right was acquired long ago. The right sought to be seized here is merely an additional servitude, wholly incidental to the operation of the pipe line, which has been transporting oil and thus serving its public purpose for more than 20 years. In short, the element of public necessity, convenience and benefit is not present here.
Concerning R.S.Mo.1949 § 523.090, supra, it has long been held that the remedy provided by this section is not exclusive, Pratt v. Saline Valley R. Co., 130 Mo.App. 175, 108 S.W. 1099, and does not preclude resort to a common law action for damages. Vaughn v. Missouri Power & Light Co., Mo.App., 89 S.W.2d 699.
It is further urged by appellant that the trial court erred in permitting plaintiffs to testify to the depreciation of the rental value of their property from the date of the erection of the fence to the date suit was filed. The proper measure of actual damages in this case is the damage, if any, to the sod, vegetation and soil resulting from the physical trespass and the resulting depreciation in the fair and reasonable rental value of the property. DeSalme v. Union Electric Light & Power Co., 232 Mo.App. 245, 102 S.W.2d 779, loc. cit. 782. The measure of damages submitted in Instruction No. II was more favorable to appellant than that to which it was entitled, so that it was not prejudiced thereby.
Appellant's contention that the judgment should be reversed for error in permitting plaintiffs' neighbors to give in evidence their opinions that the fence had depreciated the rental values of their respective properties is resolved against appellant. Although it was error to receive opinion evidence that rental values of similarly situated and similarly constructed properties were depreciated by the building of the fence, the error was harmless because the evidence pertained only to the amount of actual damages. Appellant does not complain that the amount of actual damages awarded (the sum of $157.50) was excessive, if the measure of damages employed was proper. Furthermore, the amount awarded is consistent with the evidence given by the plaintiffs, to which exception has not been taken; the amounts testified to by the other witnesses did not vary from the amounts testified to by plaintiffs; and, as respondents point out, the damage instruction upon which the case was submitted to the jury clearly confined the jury to the depreciation in *73 the reasonable rental value in the use of plaintiffs' property.
Appellant claims that there is no basis for an award of punitive damages; that the officers and agents which committed the trespass in September, 1948, had no knowledge of the amendment to the petition in the condemnation proceedings in 1928 in which the right to fence was specifically excluded from the rights the appellant acquired; that before building the fence they made a reasonably diligent search to ascertain their rights and installed the fence in good faith, in the honest belief that the fence was lawful only after legal clearance by a competent lawyer; that the inference of knowledge on the part of the corporation cannot be drawn; that there was no showing that the officers who authorized the erection of the fence knew about the amended petition in the 1928 condemnation suit; and that immediately upon learning that an amended petition had been filed therein the corporation stopped work on the fence.
On the other hand, respondents point out that the knowledge of the express reservation of surface rights to the landowner and the specific exclusion of the right to fence the right of way, possessed by the agents of the corporation in 1928, was the knowledge of the corporation; that the knowledge of one set of agents and officers in 1928 is the knowledge of a different set of agents and officers in 1948 on the theory that when a corporation acts it does so in the possession of the composite knowledge which comes to it through its various agents and officers through the years. Respondents conclude that the corporation, knowing it had no right to fence, nevertheless intentionally built the fence unlawfully and without any just cause or excuse, and that the corporation therefore should pay punitive damages because it is guilty of "legal malice".
There is no doubt that punitive damages may not be awarded unless there is a showing of malicious, wilful, intentional or reckless injury, State ex rel. Kurn v. Hughes, 348 Mo. 177, 153 S.W.2d 46; and that "malice" means the intentional doing of a wrongful act without just cause or excuse, which means conscious knowledge of wrongdoing, Hussey v. Ellerman, Mo.App., 215 S.W.2d 38; Van Sickle v. Katz Drug Co., 235 Mo.App. 952, 151 S.W.2d 489.
We have concluded that plaintiffs made a case for an award of punitive damages based on legal malice.
A corporation, being an artificial entity, a mere creature of the law, cannot think, speak or act otherwise than by and through the thoughts, speech and action of human beings. Hannibal Inv. Co. v. Schmidt, Mo.App., 113 S.W.2d 1048; 19 C.J.S., Corporations, § 960, page 417. Under the statutes which authorize its existence and prescribe its form and structure the powers of a corporation are administered and its responsibilities are discharged by an officiate of human beings consisting of a board of directors and certain designated officers such as president, vice-president, secretary, etc. Their thoughts, knowledge, words and acts in the exercise of corporate functions within the scope of its charter powers are the thoughts, knowledge, words and deeds of the corporation. Thus, a corporation is held to know what transpires in a lawsuit in which it is a party, brought into court by the service of summons upon its president or other chief officer. Campbell v. Pope, 96 Mo. 468, 10 S.W. 187. And where a corporation, as a corporate function, institutes legal proceedings in a court of record to acquire private property rights in the exercise of its power of eminent domain, the corporation is legally accountable as and for actual knowledge of whatever limitations may be imposed upon, as well as rights acquired by, it in the course of those proceedings. The land and right of way department, attorneys and highly placed officials of the pipe line corporation in the case at bar, therefore, in 1928, had actual knowledge of the fact that by reason of the amendment of its petition in the condemnation suit in federal court the corporation did not acquire, but on the contrary was specifically denied, the right to fence this right of way. This actual knowledge on the part of these officials is to be *74 imputed to the corporation, and, once imputed to the corporation, became the knowledge of the corporation for all time and for all legal intents and purposes. Certainly in the case of an individual, knowledge acquired in 1928 with respect to his limited right of entry on land would be attributed to him in the course of legal proceedings in 1948 affecting his right of entry. A corporation should be held to the same responsibility for the possession by its officers of actual knowledge of corporate affairs that is imposed upon an individual.
Appellant, however, claims that because of the change in the personnel of its officers and agents in the course of the years the corporation should be excused from the legal effects of its previous knowledge. We hold that appellant having once been charged with the legal effects of actual knowledge of its limited right to enter the land of respondents, continued to be possessed of such knowledge regardless of the changes which may have occurred during the years in the personnel of its officers in charge of the land department or in the identity of its right of way officials.
The Supreme Court of the United States stated the rule in this language in Mechanics Bank of Alexandria v. Seton, 1 Pet. 299, loc. cit. 309, 26 U.S. 299, loc. cit. 309, 7 L. Ed. 152, "Notice to the board of directors, when this stock was transferred to Lynn, that he held it as trustee only, was notice to the bank; and no subsequent change of directors could require a new notice of this fact. So that if the bank had sustained any injury, by reason of a subsequent board not knowing that Lynn held the stock in trust, it would result from the negligence of its own agents, and could not be visited upon the complainants."
The Supreme Court of North Carolina, in Baker v. Atlantic Coast Line R. Co., 173 N.C. 365, 92 S.E. 170, loc. cit. 173, L.R.A. 1917E, 266, said: "It is also accepted that notice to the officers of corporations is notice to the corporations, and that no subsequent change of officers requires new notice of the facts * * *."
In United States Nat. Bank of Holdrege v. Forstedt, 64 Neb. 855, 90 N.W. 919, the court said: "The rule is well settled that a bank or other corporation, being once charged with notice of the character of a transaction, continues to be affected by such notice, whatever changes may occur in the personnel of its working force."
See also Baird v. New York Cent. & H. R. R Co., 64 App.Div. 14, 71 N.Y.S. 734; Watt v. German Sav. Bank, 183 Iowa 346, 165 N.W. 897; Birmingham Trust & Savings Co. v. Louisiana Nat. Bank, 99 Ala. 379, 13 So. 112, 20 L.R.A. 600; Thompson on Corporations, Vol. 3, § 1764, p. 330; Fletcher's Cyclopedia, Corporations, Vol. 3, § 801, p. 50; 19 C.J.S., Corporations, § 1083, page 621; 13 Am.Jur. § 1110, p. 1036.
It is argued, however, that before a corporation may be held liable for punitive damages the act complained of must have been such as to render the servant or agent himself personally liablethat the agent or officer who committed the wrongful act must have been chargeable with legal or actual malice; that the officers in 1948 who directed the erection of the fence had no knowledge of the previous limitation on the corporation's rights of entry, could not be held personally liable, and that, therefore, the corporation may not be held liable. In the cases cited: State ex rel. United Factories v. Hostetter, 344 Mo. 386, 126 S.W. 2d 1173; Simmons v. Kroger Grocery & Baking Co., 340 Mo. 1118, 104 S.W.2d 357; Haehl v. Wabash R. Co., 119 Mo. 325, 24 S.W. 737; Conrad v. Allis-Chalmers Mfg. Co., 228 Mo.App. 817, 73 S.W.2d 438, see also 19 C.J.S., Corporations, § 1286, page 966, the liability of the corporation for punitive damages is made to depend upon the application of the doctrine of respondeat superior. Those are cases of derivative liability where the corporation has not directed or authorized the wrongful act but is made to respond because the act was done in the scope of the employment of its subordinate agent. The case at bar, however, is quite different in that the act of trespass was not done unbeknownst to the officers of the corporation or in the wrongful discharge of properly delegated duty, but instead was the act of the corporation in chief. The order to build the fence resulted from the action taken by highly *75 placed managing officers of the corporationA. E. Groff, secretary of the corporation, manager of its land department in charge of all corporate records, and supervisor of the acquisition of rights of way, and H. H. Anderson, vice-president of the corporation. The distinction between the principal acting for itself by an inherent faculty and the principal acting through an agent is well pointed out in Buffalo Trust Co. v. Producers' Exchange No. 148, 224 Mo.App. 199, 23 S.W.2d 644, loc. cit. 647. The corporation here was not acting through an agent under the principles of the doctrine of respondeat superior, but was acting through agency and in chief, and in such situation may be held liable for punitive damages even though the individuals through whom the corporation acted may themselves have been innocent of any wrongdoing.
In the argument of the case reference was made to State ex rel. John Hancock Mut. Life Ins. Co. v. Hughes, Mo.Sup., 152 S.W.2d 132, 135, wherein the Supreme Court held that an insurance corporation is not liable to pay the statutory penalties for vexatious delay where the soliciting agent of the company, without insured's knowledge, knowingly wrote false answers concerning the health of the insured in the application but did not communicate the knowledge of the true condition of the insured's health to his company superiors. Holding that the rule as to constructive knowledge of the corporation should not be applied against an insurance corporation in connection with inflicting penalties for vexatious delay, the court pointed out that while it is the duty of the soliciting agent to secure applications, "he has no function whatever in regard to resisting the payment of claims. This is a matter of common routine in the insurance business of which we can take judicial note." In other words, that the constructive knowledge of one department of an insurance corporation should not be imputed to the corporation for the purpose of imposing penal liability for the actions of another department serving a different function. The distinction between that case and the case at bar is at once obvious for the reason that here the knowledge came to and the wrong was committed by the same department of the corporation. The knowledge was obtained by the land department in charge of the acquisition of rights of way in 1928 in a condemnation suit, and the land department in 1948 directed the commission of the act which constituted a trespass.
In the case at bar there is no question that a trespass was committed. It is acknowledged that the building of the fence was wrongful. Where a corporation is actually aware of its limited right to enter land, and with such knowledge it directs the commission of acts which constitutes a trespass in violation of that right, there is a basis for an award of punitive damages. There was sufficient competent evidence in this record to justify the submission to the jury of the question whether appellant "knew it had no right to build and maintain said fence and gate at the time it caused same to be built, and did so without just cause or excuse and with a reckless disregard of plaintiffs' property rights."
Finally, it is urged that the award of punitive damages in the sum of $2,750 is grossly excessive. Bearing in mind that this is not a case of actual malice but of "legal" malice only, the character of the injury, the mitigating and extenuating circumstances of the case, the shortness of the period for which this recovery imposes punishment (3½ months) and the other elements necessary to be considered in reviewing an award of exemplary damages, we have concluded that the award is out of proportion to the degree of wrong involved, and that the maximum amount of punitive damages which the substantial evidence will support is the sum of $500.
The Commissioner accordingly recommends that if plaintiffs will, within 15 days, remit the sum of $2,250 the judgment of the circuit court will be reversed and the cause remanded with directions to the circuit court to enter a new judgment in favor of plaintiffs and against defendant in the sum of $657.50 with interest at six per cent from the date of the original judgment; otherwise the judgment will *76 be reversed and the cause remanded for a new trial upon the limited issue of whether plaintiffs shall recover punitive damages and if so in what amount.
PER CURIAM.
The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.
The judgment of the circuit court is accordingly, reversed and the cause remanded in accordance with the recommendation of the Commissioner.
BENNICK, P. J., and ANDERSON and HOLMAN, JJ., concur.
Order to Transfer.
PER CURIAM.
In accordance with the provisions of Article V, Section 10, Constitution of 1945, and of Rule 2.06 of the Supreme Court, the Court of its own initiative, after opinion and during the pendency of motions of respondents and appellant for a rehearing, or, in the alternative, for a transfer of the cause to the Supreme Court, doth order that this cause be and the same is hereby transferred to the Supreme Court because of the general interest and importance of the question involved in the cause.