Dale STERBENZ and Norma Sterbenz, Appellants,

v.

KANSAS CITY POWER AND LIGHT COMPANY, Respondent.

No. WD 71776.

Missouri Court of Appeals,
Western District.

Oct. 5, 2010.

James B. Jackson, Independence, MO, for appellants.

Walter M. Brown, Kansas City, MO, for respondent.

Before Division One: JAMES M. SMART, JR., Presiding Judge, MARK PFEIFFER, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

This case involves a suit by property owners against a utility for trespass damages following the installation of an underground utility line without an easement. Dale and Norma Sterbenz (collectively the "Sterbenzes") appeal from the trial court's judgment denying their motion for a new trial following the entry of a jury verdict in their favor against Kansas City Power and Light ("KCP & L"). The Sterbenzes' claim that the trial court erred in denying their motion for new trial because: (1) the jury award for a permanent easement was not supported by competent and substantial evidence in that it was outside the range of the evidence; (2) the jury award for a temporary easement was not supported by competent and substantial evidence in that it was outside the range of the evidence; (3) jury instructions five and six were improperly submitted to the jury as an affirmative defense of failure to mitigate was not supported by the facts in this case; and (4) the trial court improperly submitted the issue of attorney's fees to the jury. We reverse and remand for a new trial.

## Factual and Procedural History

The Sterbenzes purchased their home at 2007 North Bedford in Independence, Missouri, in 1975.[1] A survey reflected an easement on the north side of the property but not on the south side. A fence was located on the south side of the property. The fence was not on the property line but was located approximately one foot beyond the Sterbenzes' property line on an adjacent neighbor's property.

In early April 2007, KCP & L excavated holes along the south side of the Sterbenzes' property. KCP & L installed a conduit in preparation for later placement of a high voltage electric line. On April 12, 2007, Mr. Sterbenz approached a KCP & L contractor working at the site and requested documentation to verify that KCP & L had a right to place an electric line in that area. No documentation was provided. The Sterbenzes did not immediately pursue a complaint about the construction activities as they initially believed

---

1. We view the evidence in the light most favorable to the verdict. State v. Guinan, 665 S.W.2d 325, 327 (Mo. banc 1984).

the excavation was occurring on the strip of property inside the fence but owned by their neighbor. An existing electrical line in this same general area had been on the neighbor's property for years.

In late April 2007, a contractor retained by KCP & L returned to the Sterbenzes' property and installed a high voltage line into the previously placed conduit. By now the Sterbenzes had determined that the construction activity was occurring on their property. The Sterbenzes complained that KCP & L did not have an easement permitting them to place a line along the south side of their property. On May 2, 2007, several KCP & L representatives investigated the complaint and determined that, in fact, KCP & L did not have the necessary easement. On that same date, KCP & L offered to move the line or to pay the Sterbenzes for an easement. In June 2007, KCP & L followed up with a formal offer to move the line or to pay for the easement. The Sterbenzes refused these offers.

On February 5, 2008, the Sterbenzes filed a lawsuit against KCP & L and Custom Lighting Services ("CLS"), the company with whom KCP & L contracted to install the conduit and electric line. The Sterbenzes asserted five claims, including separate claims of trespass and ejectment against KCP & L and CLS, and an inverse condemnation claim. On March 16, 2009, the Sterbenzes dismissed the inverse condemnation claim.

On August 25, 2009, KCP & L filed a separate eminent domain action to obtain an easement over that portion of the Sterbenzes' property affected by the electric line. The easement tract is approximately five feet wide and 102 feet long. The eminent domain action was stayed by agreement pending disposition of the Sterbenzes' lawsuit. In fact, though not disclosed in the parties' briefs, the record on appeal indicates that the parties stipulated to be bound by the outcome of the trespass case,[2] such that KCP & L would pay the damages awarded by the jury in exchange for an executed easement from the Sterbenzes, and the eminent domain action would be dismissed.

In September 2009, the Sterbenzes' lawsuit proceeded to a jury trial. At the close of the evidence, the Sterbenzes withdrew their claims against CLS and withdrew the ejectment claim against KCP & L. This left only the claim of trespass against KCP & L, on which KCP & L admitted liability. At KCP & L's request, and over the Sterbenzes' objection, the jury was also instructed on the affirmative defense of failure to mitigate damages.

The jury returned a verdict in favor of the Sterbenzes for trespass and awarded damages in the amount of $695 for property damage, $500 for expenses and costs, $0 for attorney's fees, and $750 for punitive damages. The Sterbenzes filed a motion for new trial which was denied by the trial court. The Sterbenzes appeal.

### Standard of Review

We review the trial court's denial of a motion for new trial for abuse of discretion. *Torre Specialties, Inc. v. Coates*, 832 S.W.2d 914, 918 (Mo.App. W.D.1992) (citing *Summers v. Fuller*, 729 S.W.2d 32, 33 (Mo.App. E.D.1987)). An abuse of discretion occurs when a trial court's ruling "is clearly against the logic of the circumstances before the court at the time and is

---

**2.** The stipulation was discussed in KCP & L's response to the Sterbenzes' motion for new trial and in the Sterbenzes' reply to that response. The stipulation was also discussed with the trial court during the jury instructions conference, and it is evident from that discussion that the parties had previously discussed the stipulation with the trial court.

so unreasonable and arbitrary that it shocks one's sense of justice and indicates a lack of careful consideration." *Gallagher v. Daimlerchrysler Corp.*, 238 S.W.3d 157, 162 (Mo.App. E.D.2007). "We will reverse the trial court's decision only when we find a substantial or glaring injustice." *Workman v. Workman*, 293 S.W.3d 89, 103 (Mo. App. E.D.2009).

### Points I, II and III

In points one and two, the Sterbenzes contend that the trial court erred in denying their motion for new trial because the jury's award of $695 for property damage was unsupported by the evidence. Specifically, the Sterbenzes contend that because this award equals the cost to replace sod and flowers following KCP & L's construction activities, it is evident that the jury failed to award any damages for a permanent easement (point one) or a temporary easement (point two) and that an award of "zero" damages for the easements was not within the range of the evidence. In point three, the Sterbenzes contend that the trial court erred in denying their motion for new trial because the trial court improperly submitted instructions five and six over their objection. Instructions five and six permitted the jury to consider whether the Sterbenzes failed to mitigate their damages by refusing early on to permit KCP & L to remove the underground line. The Sterbenzes claim that the circumstances in this case did not permit submission of a mitigation instruction. We consider these three points on appeal together as our discussion of whether the jury's award for property damages was supported by the evidence must necessarily take into consideration the effect of the affirmative defense instruction.

Neither party has assisted this court (nor, presumably, the trial court) by providing citation to the law applicable to the subset of trespass actions filed against utilities otherwise empowered with the right of condemnation. That body of law is critical to an understanding of the issues raised on appeal and of the manner in which this case was tried. We begin, therefore, with a discussion of the applicable law.

### The effect of trespass by an entity possessing the power of eminent domain

■ Pursuant to the Missouri Constitution, "private property cannot be disturbed nor can the proprietary rights of the owner therein be divested until the damages are ascertained and paid the owner or paid into court for the owner." *Beetschen v. Shell Pipe Line Corp.*, 248 S.W.2d 66, 70 (Mo.App.1952).[3]

■ When an entity otherwise entitled to exercise the power of eminent domain ignores that power and trespasses upon private land, the landowner has an election of remedies. *Id.* The landowner "may proceed by way of injunction to restrain the installation; or he may sue in ejectment; or he may avail himself of [section 523.090];[4] or he may maintain a common

---

**3.** The Court of Appeals transferred this case of its own initiative to the Missouri Supreme Court. *Beetschen*, 248 S.W.2d at 76. The Supreme Court reached the same result as the Court of Appeals, and echoed the legal analysis in all manners pertinent to this Opinion. *Beetschen v. Shell Pipe Line Corp.*, 363 Mo. 751, 253 S.W.2d 785 (1952). Notwithstanding the subsequently entered Supreme Court decision, the discussion of the law relating to the remedies available to a property owner aggrieved by trespass by an entity otherwise empowered to exercise the right of eminent domain continues to be cited. *See, e.g., Keeven v. St. Charles Cnty. Utils. Co.*, 542 S.W.2d 349, 352–53 (Mo.App.1976).

**4.** Section 523.090 provides that "[i]n case property is to be, will be, or has been by any corporation damaged for public use, any in-

law action for damages." *Id.* (citations omitted).

■ If the property owner elects the latter remedy—to sue for damages—"he may in a proper case proceed upon the theory of trespass and sue for actual damages, and when the facts warrant it recover punitive damages."[5] *Id.* (citation omitted). "A corporation which ignores the statute and the Constitution and makes entry upon the land of a private citizen without agreement with the owner or without having the damages appraised by commissioners is guilty of a willful trespass." *Id.* In the alternative to trespass, the property owner "may waive the tort and sue for the compensatory damages to which he would have been entitled if condemnation proceedings had been instituted prior to the entry."[6] *Id.*

■ If the property owner, having elected to sue for damages, decides to pursue a claim for compensatory damages for the taking (i.e. an inverse condemnation action):

[H]is theory is that of acquiescence in the taking, consent to the appropriation, and in that event he has but one action, in which he must recover all damages, past, present and prospective. *Upon the payment of the judgment in such case the same right in the land is conferred upon the corporation as if it had condemned the land formally.*

*Id.* (emphasis added).

■ If the property owner, having elected to sue for damages, decides to

pursue a common law claim for trespass, the measure of damages to be awarded depends upon whether the trespass injury is temporary or permanent. If the structure or appropriation is of a temporary nature, the property owner may "sue for such damages only as had accrued before the institution of the suit," and may bring successive actions for damages consequent upon the continuance of the structure or appropriation. *Beetschen,* 253 S.W.2d at 787–88. The theory is that "temporary damages" are assessed on the assumption that the trespasser will remediate the trespass. *Beetschen,* 248 S.W.2d at 72. Thus, in the case of a structure or appropriation of a temporary or readily removable nature, a recovery for permanent damage is not permissible. *Id.* "A recovery on the basis of permanent damage is not permissible in a common-law action for a trespass upon land unless the injury is incapable of actual, physical repair, and therefore in its nature and of necessity permanent." *Id.* Instead, the measure of damages in a temporary trespass case is generally "limited to the amount necessary to place the owner of the property in the same position he occupied prior to the injury. More specifically, damages for a temporary invasion or trespass are generally the cost of restoration and the loss of use."[7] 75 AM.JUR.2d *Trespass* Section 99, at 97–98 (2007). This measure of damages is thus applicable in trespass cases where "the injury to real property is only slight and amenable to restoration." *Nelson v. State ex rel. Mo.*

---

terested person may have such damages ascertained." All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

5. Attorney's fees, costs and expenses may also be awarded in a trespass action against a public utility pursuant to section 523.283.4.

6. This would be an inverse condemnation action.

7. Nominal damages may be awarded in the absence of calculable actual damages. *Kelley v. Kelly Residential Group, Inc.,* 945 S.W.2d 544, 553 (Mo.App. E.D.1997) (homeowners were entitled to nominal damages of one dollar for builder's trespass).

*Highway & Transp. Comm'n*, 734 S.W.2d 521, 523 (Mo.App. E.D.1987).

Conversely, if the structure or appropriation is of a permanent nature, "the cause of action [for trespass] accrues once and for all and the entire damages must be assessed in one action." *Beetschen*, 248 S.W.2d at 71. In such a case, the measure of the property owner's *actual* damages is the same as in condemnation.[8] *Beetschen*, 253 S.W.2d at 788. Thus, "[w]here injury to real property is extensive or permanent, not easily [or fully] remedied by repair, the damages are measured by diminished property value." *Kaiser v. Kadean Constr. Co.*, 719 S.W.2d 892, 895 (Mo.App. E.D.1986). This "measure of damages" is essentially identical to that for a partial taking of property, where the measure of compensation is the difference between the fair market value of the entire tract of property before and after the partial taking. *See State ex rel. Mo. Highway & Transp. Comm'n v. Modern Tractor & Supply Co.*, 839 S.W.2d 642, 648 (Mo.App. S.D.1992). In cases involving permanent trespass damages, the "cost of restoration" is not the proper measure of damage. *Kaiser*, 719 S.W.2d at 895.[9]

Though the measure of actual damages for permanent trespass is the same as the measure of damages for condemnation, we have located no authority for the proposition that the satisfaction of a permanent trespass damages judgment confers upon the trespasser "the same right in the land ... as if it had condemned the land formally." *Beetschen*, 248 S.W.2d at 70 (addressing effect of payment of judgment *should property owner elect the remedy to sue for compensatory damages for a "taking," i.e., for inverse condemnation*). It is, therefore, likely that the "trespassing" condemning authority would be required to bring a separate eminent domain action or to assert an eminent domain counterclaim in the trespass action, in order to secure "title" to the appropriated tract, though presumably, no further compensation for the "taking" would be awarded given the equivalently measured permanent trespass damages.[10]

The above described analysis has been applied in trespass actions involving entities possessing the power of eminent domain such that fences have been construed as "temporary" structures, while railroad lines, electric transmission lines, and crude oil pipelines have been construed as "permanent." *See Beetschen*, 253 S.W.2d at

---

8. In addition to actual damages, a property owner may also recover punitive damages (if warranted by the facts), and attorney's fees, costs, and expenses under section 523.283.4, if applicable. Nominal damages may be awarded in the absence of calculable actual damages. *Kelley*, 945 S.W.2d at 553.

9. We are cognizant that the measure of damages in routine trespass cases is *generally* described as the difference in value of the entire tract before and after the trespass, or the cost of restoration, **whichever is less.** *Hostler v. Green Park Dev. Co.*, 986 S.W.2d 500, 506 (Mo.App. E.D.1999). The discussion in this Opinion points out, however, that the general measure of damages is subject to modification in cases involving trespass by entities possessing the power of eminent domain and is fur-

ther dependent on the extent of the trespass— i.e. whether temporary or permanent.

10. We believe this may be what motivated the Sterbenzes and KCP & L to enter into the stipulation to permit the trespass damages to control the disposition of the eminent domain action. Because of the stipulation, the Sterbenzes would be able to argue for recovery of punitive damages, and attorney's fees, costs, and expenses in their trespass action (damages not recoverable in a condemnation action), *Hostler*, 986 S.W.2d at 507, and KCP & L would, upon payment of the trespass damages, receive an executed easement in recordable form from the Sterbenzes (relief KCP & L could not have received without formally condemning the easement tract).

788; *McReynolds v. Kan. City, Clinton & Springfield Ry. Co.*, 110 Mo. 484, 19 S.W. 824 (1892); *Tooker v. Mo. Power & Light Co.*, 336 Mo. 592, 80 S.W.2d 691 (1935); *Prairie Pipe Line Co. v. Shipp*, 305 Mo. 663, 267 S.W. 647 (1924).

### Application of the law to KCP & L's trespass on the Sterbenzes' property

KCP & L was empowered as an "electrical corporation" under section 523.010 to condemn the easement tract on the Sterbenzes' property for the public use of an underground electric line. However, it did not do so before installing the line. There is no dispute, therefore, that KCP & L trespassed on the Sterbenzes' property. In electing their remedies, the Sterbenzes initially sued in several alternative theories for trespass, ejectment, and for inverse condemnation. The Sterbenzes ultimately "elected" the remedy of trespass. KCP & L admitted its liability for trespass, leaving only the matter of damages for the jury's calculation.

■ The underground electric line installed by KCP & L on the Sterbenzes' property was a "permanent" structure. The Sterbenzes were thus entitled to permanent trespass damages. These actual damages were measurable by the difference in the value of their entire tract before and after the permanent trespass. The "cost to restore" the property to its original condition before the trespass—i.e. without the underground line—would not have been relevant, as it would not have been the measure of damage. The Sterbenzes were also entitled to argue for the recovery of punitive damages, for the pos-

sible recovery of attorney's fees, costs, and expenses pursuant to section 523.283.4, and for the recovery of any other compensatory damages supported by the evidence—i.e. their out of pocket costs for replacing sod and flowers.[11] Given the permanent nature of the trespass, the Sterbenzes' were not entitled to "temporary" trespass damages. Moreover, the Sterbenzes would not have been entitled to bring successive trespass actions, as they were obligated to bring a single trespass action for all of their past, present, and future damages.

Because the trespass action would not have resulted, per se, in any obligation for the Sterbenzes to deliver "title" to an easement to KCP & L, KCP & L separately filed an eminent domain action. Subsequently the parties reached a voluntary agreement permitting the "taking," the terms of which required the Sterbenzes to deliver a written easement in recordable form to KCP & L upon KCP & L's payment of the damages awarded by the jury in the trespass action. Thereafter, the eminent domain action would be dismissed as no longer necessary. By so stipulating, the Sterbenzes were "acquiescing" to the presence of the underground electric line much as would have been the case had they elected to pursue the remedy of inverse condemnation. Correspondingly, KCP & L was committing to acquire the easement.

### The trial of the Sterbenzes' trespass action

With this backdrop in place, we turn to the Sterbenzes' claim that the jury's award

---

11. The cost to replace sod and flowers was not evidence of the "cost of restoration." Restoration of the Sterbenzes' property would have involved removing the underground line and then restoring the property. However, the cost to replace damaged items, particularly where replaced or repaired by the property owner, is separately recoverable. *See Keeven*, 542 S.W.2d at 353 (holding landowners were "entitled to be paid for the permanent appropriation of easement rights, but also for . . . the ensuing damage to the trees, land, etc. . . .").

for "property damages" was not supported by the evidence because it failed to compensate them for the value of a temporary easement and a permanent easement. We use the phrases "temporary easement" and "permanent easement" only because those are the labels employed by the Sterbenzes. They are not the proper labels. The proper nomenclature would be "temporary trespass damages" and "permanent trespass damages." *See Beetschen*, 248 S.W.2d at 71–72.[12]

The verdict form described four categories of damages: (1) "For property damage," (2) "For expenses and costs," (3) "For attorney's fees," and (4) "For punitive damages." The jury awarded $695 for property damage.[13] The jury heard evidence of property damage relating to: (a) physical damage to sod and flowers on the Sterbenzes' property resulting from KCP & L's construction activities; (b) the value of a temporary easement for the twenty-nine month period from commencement of construction through trial; and (c) the value of a permanent easement for the continued placement of the utility line on the property.

■■■ The Sterbenzes did not object to the verdict form. In fact, the record of the instruction conference indicates that the verdict form was tendered by the Ster-

benzes.[14] To the extent the Sterbenzes' claim on appeal constitutes a veiled objection to the verdict form's failure to require separate findings for the consequential damages they incurred to replace sod and flowers and for the value of their claimed temporary and permanent easements, no such claim was preserved for appellate review. *Berra v. Danter*, 299 S.W.3d 690, 702 (Mo.App. E.D.2009) (citing Rule 70.03 which provides that counsel shall make specific objections to instructions considered erroneous, and holding that no party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection). Further, the Sterbenzes may not complain of error in a jury instruction on appeal where they tendered the instruction to the trial court. *Warren v. London & Sons*, 883 S.W.2d 570, 571 (Mo.App. E.D. 1994) ("Generally, a party may not complain of error in instructions it requested.").

■■■ The Sterbenzes' claim that no amount was awarded for the value of a temporary or permanent easement requires this court to speculate about how the jury calculated its award of $695 for "property damage." Though "property

---

12. The Sterbenzes were not entitled to temporary trespass damages. As discussed, *supra,* the nature of temporary trespass damages presumes a temporary structure, thus limiting the recovery of the damages to the period from the trespass to the time of trial, with the right to bring successive causes of action for future periods. Because the electric line was "permanent" in nature, only permanent trespass damages were recoverable. *Beetschen,* 253 S.W.2d at 788; *Kaiser,* 719 S.W.2d at 895. However, KCP & L did not object to the introduction of "temporary easement" evidence at trial. We discuss the Sterbenzes' claim that the jury erroneously failed to award temporary trespass damages mindful that such damages were not properly awarda-

ble in the first place, but bound by the fact that the jury improvidently heard evidence of such damages.

13. The jury also awarded $500 in costs and expenses, $750 in punitive damages, and $0 in attorney's fees.

14. During the instruction conference, the trial court noted that all instructions were tendered by the Sterbenzes except as expressly noted. Thereafter, the only instruction noted as tendered by KCP & L was Instruction No. 6—the mitigation affirmative defense instruction.

damage" was not defined in the jury instructions, the jury was instructed that it "must find the issues in favor of plaintiffs and award plaintiffs such sum as you believe will fairly and justly compensate plaintiffs for any damages you believe they sustained as a direct result of the occurrence mentioned in the evidence." [15] This measure of damages encompassed all of the evidence the jury heard about the costs incurred by the Sterbenzes to replace sod and flowers and about the value of the claimed temporary and permanent easements. It is not possible, therefore, to conclude that the jury's award of $695 for "property damages" was intended solely as an award for the amount claimed by the Sterbenzes for damage to sod and flowers. "Reviewing courts examine what the jury found, not the possible or even probable reasoning it used. '[W]e may not speculate upon what a jury meant by what it said.'" *Children Int'l v. Ammon Painting Co.*, 215 S.W.3d 194, 200 (Mo.App. W.D. 2006) (quoting *Johnson v. Estate of Girvin*, 370 S.W.2d 163, 167 (Mo.App.1963)).

The Sterbenzes nonetheless argue that we can look behind the jury's property damage award to conclude that the award failed to compensate for their claimed easements because the range of evidence for the value of both the temporary and the permanent easement exceeded $695. We disagree.

Mrs. Sterbenz claimed the temporary easement had a "rental value" of $76.00 per month. Mr. Sterbenz provided a similar value and claimed that over the twenty-nine month "temporary easement period" the "rental value" would have been

$2,225.00.[16] The Sterbenzes claimed a right to assess a "rental value" for the temporary easement because KCP & L "occupied" the easement tract during the twenty-nine month temporary easement period. With respect to the permanent easement, Mr. Sterbenz testified to damages of $10,400, while Mrs. Sterbenz claimed damages of between $10,000 and $15,000. The Sterbenzes based these calculations on their opinions about the difference in value of the property before and after the installation of the underground utility line. The Sterbenzes offered no expert testimony about the effect of the underground line on the value of their property and offered no evidence about how the underground line affected the use of their property to lend credence to their personal opinions about the loss of value.

The jury heard the testimony of KCP & L's expert witness, Dennis Keithley, a certified real estate appraiser. Keithley testified that there was no difference in the fair market value of the Sterbenzes' property before the electrical conduit was placed and after it was placed. Keithley testified that he did not believe a permanent easement for the line caused a diminution in the value of the property. He testified that easements exist on almost every tract of property sold and that he had never seen a case where a residential sale was influenced by the presence of a utility easement. Keithley thus valued the Sterbenzes' damages resulting from a permanent easement at $0. This testimony had equal application to the Sterbenzes' claim of a temporary easement, as Keithley's

---

**15.** This language appeared in Instruction No. 5. As we discuss, *infra*, this was not the proper instruction to use to instruct the jury on the measure of damages. However, this portion of Instruction No. 5 was tendered by the Sterbenzes, and thus, no objection to its form

was preserved by the Sterbenzes. *Warren*, 883 S.W.2d at 571.

**16.** We note again that these were not recoverable damages given the permanent nature of the trespass injury involved in this case. *See* footnote 12.

testimony addressed the difference in value of the property before and after the electric line was installed, a time period which necessarily included the twenty-nine month "temporary easement" period argued by the Sterbenzes.

Keithley did testify on cross examination that if the small tract of property containing the permanent easement were to be sold, it would have a value of $1,703.75. However, he noted that the Sterbenzes were not selling the tract of property containing the easement and that the Sterbenzes had not lost ownership, possession, or use of the easement tract. The Sterbenzes rely on this testimony as the "floor" amount that could have been awarded as damage for the "permanent easement." This argument is unfounded, as the "incremental value" of the easement tract as compared to the value of the Sterbenzes' property as a whole was not a proper measure of difference in value.[17]

■ The "range of the evidence" with respect to the value of the claimed easements was between $0 and $2,250.00 for the temporary easement,[18] and between $0 and $15,000.00 for the permanent easement. The jury's award for property damages falls within this range. Thus, even if we assume that the $695 property damage award was intended by the jury to cover only the damage to the Sterbenzes' sod and flowers, there was substantial evidence presented which would have permitted the jury to award no damages for the temporary and the permanent easements. On review, our role is limited to inquiring "'whether the amount of the verdict is responsive to the evidence on the issue of damages.'" *Heins Implement Co. v. Mo. Highway & Transp. Comm'n,* 859 S.W.2d 681, 692 (Mo. banc 1993) (citation omitted). "The opinion of a single qualified witness constitutes substantial evidence." *Id.* "While the jury may disbelieve an owner or owner's expert as to valuation, the record must establish some basis for the jury's verdict...." *Id.* at 693. Here, the record satisfied this requirement. Thus, but for our subsequent discussion of the impact of the affirmative defense instruction on the jury's calculation of property damages, we would be bound to conclude that the jury's award is supported by the evidence.

■ Though not raised by either party at trial or on appeal, we are concerned that the jury was not properly instructed on the issue of damages. There are no approved MAI instructions for trespass to land. *McNamee v. Garner,* 624 S.W.2d 867, 868 (Mo.App. E.D.1981). In this case, the damage instruction that was given advised the jury that it "must find the issues in favor of plaintiffs and award plaintiffs such sum as you believe will fairly and justly compensate plaintiffs for any damages you believe they sustained as a direct result of the occurrence mentioned in the evidence." This instruction, **which was tendered by the Sterbenzes** (with the exception of the affirmative defense tail), was based on a modification of MAI 31.07, with a tail added for an affirmative defense as permitted by MAI 4.01. MAI 31.07 is a

---

17. *See Evinger v. McDaniel Title Co.,* 726 S.W.2d 468, 475 (Mo.App. W.D.1987) (real property is unique such that the fair market value of property cannot be calculated in increments because it is possible that there would be no market at all for a portion of the real estate).

18. The jury was free to disregard or disbelieve the Sterbenzes' testimony about the "rental value" of the property for the claimed temporary easement period and, as noted, could have viewed Keithley's testimony regarding the difference in value of the property before and after the electric line was installed as applicable to both the temporary and the permanent easement periods.

verdict director. It is the verdict director to be employed in a case where liability is admitted. When liability is admitted, MAI 31.07 essentially directs a verdict on liability and instructs on damages. In effect, therefore, MAI 31.07 "reads" like a damage instruction. In fact, MAI 31.07 is virtually identical to MAI 4.01.

MAI 4.01 is the damage instruction to be used in cases involving personal injury, or personal injury and property damage. *Kelley*, 945 S.W.2d at 552 (holding that "MAI 4.01 should only be given where there has been damage to both person and property"). This was a property damages only case. MAI 4.02 is the required damage instruction in cases involving property damages only, as it defines damages as "the difference in the fair market value of the property before it was damaged and the fair market value after." *Kelley*, 945 S.W.2d at 552; *See also Hayes v. Dalton*, 257 S.W.2d 198 (Mo.App.1953).

It was not appropriate, therefore, to use a "verdict directing/damage" instruction in this case that was modeled after MAI 4.01. *Id.* In fact, in this "permanent trespass" damages case where the measure of actual damages is the same as for condemnation, it was even more important that the damage instruction follow the template of MAI 4.02, an instruction which bears striking similarity to MAI 9.02, the instruction for use in eminent domain actions involving partial takings.[19] Though MAI 4.02 will have to be modified in all trespass actions, it is nonetheless the proper damage instruction with which to begin.[20]

In this case, the jury was never instructed that it was obligated to award property damages calculated as the difference in value of the Sterbenzes' property before and after the permanent trespass. The jury was never instructed that it could award in addition compensatory damages, which were limited in this case to the cost to replant sod and flowers. The jury was never instructed about the possibility of awarding nominal actual damages for trespass.

■ As noted, the Sterbenzes did not "object" to Instruction No. 5. In fact, they tendered Instruction No. 5. They are permitted no relief from the erroneous instruction as a result. *Warren*, 883 S.W.2d at 571. We have nonetheless elected to comment on this subject because, for reasons hereinafter discussed, this case must be remanded for a new trial. We intend our discussion, therefore, as guidance to the parties and to the trial court on retrial, and to avoid leaving the mistaken impression with those relying on this Opinion that these parties properly instructed the jury on damages.

19. MAI 9.02 requires the jury to award the property owner "the difference between the fair market value of [property owner's] whole property immediately before the taking [insert (date of appropriation)] and the value of [property owner's] remaining property immediately after such taking, which difference in value is the direct result of the taking and of the uses which [condemning authority] has the right to make of the property taken."

20. For example, in the routine trespass case, the measure of damage would need to be the difference in value of the property before and after the trespass or the cost to repair, which- ever is less. *Hostler*, 986 S.W.2d at 506. In a temporary damages trespass case involving an entity with the power of eminent domain, the measure of damage would be the cost of restoration and the value of lost use. 75 AM.JUR.2d *Trespass*, Section 99, at 97–98 (2007). In any trespass action, the measure of damages could be modified to permit recovery of consequential damages supported by the evidence, beyond the applicable trespass measure of damages. Section 523.283.4. And in any trespass case, the ability to enter an award of nominal actual damages should be instructed. *Kelley*, 945 S.W.2d at 553.

■ There is another concern presented by Instruction 5, however, which does require us to reverse the judgment and to remand this case for a new trial. The instruction included an affirmative defense tail. The "tail" led the jury to Instruction No. 6 which instructed on an affirmative defense for failure to mitigate damages. The affirmative defense tail on Instruction No. 5 and Instruction No. 6 were submitted over the Sterbenzes' objection.

Instruction No. 5 instructed that if the jury found that the Sterbenzes failed to mitigate damages as submitted in Instruction No. 6, then in determining the Sterbenzes' total damages the jury *must not include those damages that would not have occurred without such failure.* Instruction No. 6 instructed that the jury must find that the Sterbenzes failed to mitigate their damages if it believed: (1) that the Sterbenzes failed to accept KCP & L's offer to remove the line; (2) that the Sterbenzes thereby failed to use ordinary care; and (3) that the Sterbenzes thereby sustained damage that would not have occurred otherwise.

The Sterbenzes timely objected to Instructions No. 5 and 6. They claimed:

[T]hat although KCP & L offered to remove, or said they were going to remove, there was no showing that the Sterbenzes would have controlled the movement of the wire. There is no testimony that KCP & L could not come in and move the wire or that KCP & L could not have at that time condemned that strip of land where the wire is. So that being the case, there was nothing the plaintiff could do to mitigate their damages. And for that reason we object to the instruction suggesting that they had some duty to do so.

In their motion for new trial, the Sterbenzes re-asserted essentially the same arguments.

A jury instruction must be supported by substantial evidence which, if true, is probative and from which the jury can reasonably decide the case. In determining whether substantial evidence exists, we review the evidence and inferences in a light most favorable to the party tendering the instruction. To obtain reversal of a jury verdict on grounds of instructional error, [the Sterbenzes] must show that: (1) the offending instruction misdirected, misled or confused the jury, and (2) prejudice resulted from the error. The burden of proof rests with the party alleging error.

*Holder v. Schenherr,* 55 S.W.3d 505, 507 (Mo.App. W.D.2001) (citations omitted).

By the time this case was tried, the Sterbenzes had "acquiesced" in the presence of the underground utility line. They had dismissed their action in ejectment and were proceeding on a theory of trespass based on a permanent structure or appropriation. By definition, the permanent trespass was of a nature not easily removed, rendering "cost of restoration" damages immaterial. That fact alone calls into question the propriety of submitting a "mitigation" defense based on the Sterbenzes refusal to permit KCP & L to remove the line. More compelling in this case, however, is that by the time of trial, KCP & L had sued for eminent domain, and the parties had stipulated that the utility line would *stay at the location where it was installed* and that the Sterbenzes, once paid their trespass damages, would deliver a written easement to KCP & L for the easement tract. Any notion that the utility line would ever be removed was no longer material to this case. As such, it was highly prejudicial and inherently unfair to charge the Sterbenzes with a duty to mitigate damages by permitting the removal of the line. The effect of the mitigation instruction was to permit KCP

& L to argue for a material reduction in the damages otherwise awardable to the Sterbenzes for the permanent trespass on their property, while permitting KCP & L to keep the utility line in place without compensation for the "taking." This was error.

■ The "objections" raised by the Sterbenzes to the affirmative defense instruction were not as precise as they could have been. " 'The rationale behind making objections is to avert error and allow the trial court to make an intelligent ruling.' " *Gill Constr., Inc. v. 18th & Vine Auth.*, 157 S.W.3d 699, 718 (Mo.App. W.D. 2004) (quoting *Gamble v. Bost*, 901 S.W.2d 182, 188 (Mo.App. W.D.1995)). We believe the objections, though not in model form, were sufficiently detailed to permit the trial court the opportunity to avoid error. This is particularly so as the parties' stipulation was discussed during the instruction conference.

We cannot discern whether the jury's award for "property damages" was a result of its acceptance of Keithley's testimony (and corresponding rejection of the Sterbenzes' testimony) about the effect of the permanent trespass on the value of the property, or whether the award was a result of the jury doing precisely what Instructions No. 5 and No. 6 combined to advise, which was to not award damages which could have been avoided had the Sterbenzes permitted KCP & L to remove the line. We also cannot conclude that the jury's damage awards for punitive damages, attorney's fees, costs, and expenses were uninfluenced by the improper affirmative defense.[21] We are left with no

alternative, therefore, but to reverse the trial court's judgment and to remand this case for a new trial.

## Point IV

■ We address the Sterbenzes' fourth point on appeal to provide guidance on a subject likely to arise on retrial. The Sterbenzes claim that the trial court erred in denying their motion for new trial because a determination of attorney's fees was best left to the sound discretion of the trial court. We disagree.

At trial, the Sterbenzes put on evidence through the testimony of their attorney regarding their attorney's fees. The attorney testified that the Sterbenzes hired him on August 7, 2007, at a rate of $200 an hour and that his rate was reasonable. The attorney testified that the total amount of fees incurred was $37,334.44 and that he believed the amount was reasonable for the work performed. The attorney also testified that he had a contingency fee agreement with the Sterbenzes, a copy of which was offered into evidence.

At the instruction conference, the Sterbenzes' attorney stated to the court, "I just want to make a record that plaintiffs would move for the court to hear, rather—you on attorney's fees, rather than the jury, understanding that it's already in evidence before them. And if the court denies that motion, then I would have no objection to the verdict [form]." Defense counsel objected to any modification of the verdict form that removed the attorney's fee portion because the Sterbenzes had made the election to let the jury hear the matter.

21. For example, the Sterbenzes' attorney emphasized that all of the Sterbenzes' attorney's fees were incurred after August 7, 2007, and thus after the Sterbenzes refused KCP & L's offer to remove the line. In light of the fact that the fees were not incurred until well after the Sterbenzes refused KCPL's offer to have the line removed, it would be reasonable for the jury to conclude that the Sterbenzes failed to mitigate and, thus, to choose not to award the Sterbenzes their attorney's fees.

The trial court rejected the Sterbenzes' motion.

 The issue of attorney's fees is not a question of law and is "something, of course, which juries are not uncommonly asked to do." *City of Independence ex rel. Briggs v. Kerr Constr. Paving Co.*, 957 S.W.2d 315, 323 (Mo.App. W.D.1997). Section 523.283.4 provides that where a property owner prevails in an action for trespass in an action against an entity with the power to condemn, the property owner *may* be awarded reasonable attorney's fees, costs, and expenses. The Sterbenzes concede that the statute does not *require* the award of attorney's fees, costs, and expenses and that the statute does not specify whether a trial court or jury should consider the claim for such an award.

The Sterbenzes elected during trial to present evidence regarding their attorney's fees to the jury. As such, the trial court did not abuse its discretion in refusing the Sterbenzes' request to withdraw the determination of attorney's fees from the jury's consideration. On retrial, the Sterbenzes will be free to reconsider whether to present evidence of their attorney's fees to the jury or to the trial court.

### Conclusion

The trial court's judgment is reversed and this matter is remanded for a new trial.

All concur.