# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2964
_____

Chase Barfield

*Plaintiff*

Michael D. Biffle; Gina Biffle; Dwight K. Robertson

*Plaintiffs - Appellees*

J. Carol Hutchens; Rowena Hutchens

*Plaintiffs*

v.

Sho-Me Power Electric Cooperative; Sho-Me Technologies, LLC

*Defendants - Appellants*

KAMO Electric Cooperative, Inc.; K-PowerNet, LLC

*Defendants*

------------------------------

National Rural Electric Cooperative Association; Associated Electric Cooperative; Association of Missouri Electric Cooperatives

*Amici on Behalf of Appellants*
_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

———————

Submitted: September 22, 2016
Filed: March 29, 2017

———————

Before LOKEN, GRUENDER, and BENTON, Circuit Judges.

———————

BENTON, Circuit Judge.

This case is about the scope of easements under Missouri law and the remedies if easement holders exceed their rights. Sho-Me Power Cooperative held easements to construct and operate an electric transmission line over thousands of parcels. In 1997, it decided to install fiber-optic cables alongside its electrical lines. Sho-Me used the cables for internal communications. Sho-Me assigned the cables' excess capacity to a separate company, Sho-Me Technologies, LLC (Tech), to operate a public-serving commercial telecommunications business. A putative class of owners of land subject to Sho-Me's easements sued Sho-Me and Tech for trespass and unjust enrichment. The district court certified a class of landowners, granted the landowners summary judgment on liability, and held a jury trial on damages. The district court instructed the jury to award the landowners "the fair market rental value" of Sho-Me and Tech's use of the fiber-optic cable on the landowner's land "for commercial-telecommunications purposes." The jury awarded the landowners over $79 million.

Sho-Me and Tech appeal the liability determinations, damages instructions, evidentiary rulings, and class certification. Having jurisdiction under 28 U.S.C. § 1291, this court affirms the summary judgment on trespass liability and the class certification, reverses the summary judgment on unjust-enrichment liability, vacates the damages award, and remands.

I.

Sho-Me is a rural electric cooperative (REC) governed by Missouri's Rural Electric Cooperative Law, Chapter 394 RSMo. Before 1992, Sho-Me got easements across thousands of parcels in southern Missouri. These easements' language varies. They all grant Sho-Me the right to construct and operate an electric transmission line. Some grant the right to construct appurtenances or do things "necessary and useful to the enjoyment of the easement." The district court broke the easements into several categories, three at issue in this appeal: Category 1A ("Easements for electric transmission line only or for electric transmission line with unspecified appurtenances"), Category 1B ("Easements for electric transmission lines and appurtenances which include specific references to communications equipment"), and Category 1C ("Court orders condemning easements limited to electric transmission lines and generic appurtenances or specifying related communications equipment"). Sho-Me and Tech do not dispute the district court's categorizations.

As part of its electrical transmission operations, Sho-Me communicates with unattended power substations. It used to do this by microwave radio frequencies. But in 1995, the Federal Communications Commission announced that these frequencies would no longer be available for utilities. In response, Sho-Me developed a plan. It installed fiber-optic cables alongside its electrical lines, using the cables for internal communications. It also formed Tech as a subsidiary company. Sho-Me assigned Tech the cables' excess capacity so Tech could offer commercial telecommunications services to the public. Tech currently provides broadband services to individuals and businesses across southern Missouri.

In 2010 (in state court) and then in 2011 (in federal court), Michael and Gina Biffle, Dwight Robertson, and Chase Barfield—owners of land subject to Sho-Me easements—filed putative class actions against Sho-Me and Tech. They alleged Tech's use of the fiber-optic cable for public-serving telecommunications purposes

was not authorized by the easements, making Sho-Me and Tech liable for trespass and unjust enrichment. The district court certified a Rule 23(b)(3) class of "All persons who own or owned land in Missouri underlying Defendants' electric-transmission lines that is burdened by an easement with either Defendant or their subsidiaries, which easement does not contain an arbitration clause, and on or in which a Defendant has licensed the fiber optic cable for commercial-telecommunication uses or has used the fiber optic cable for commercial-telecommunication uses." The district court entered summary judgment against Sho-Me and Tech, holding them liable for trespass and unjust enrichment on the Category 1A-C easements.[1] The landowners proceeded to a jury trial for damages on the unjust-enrichment claim alone. The jury awarded the landowners $79,014,140 for the "fair market rental value" of Sho-Me and Tech's unauthorized use of the easements.

II.

Sho-Me and Tech contend that the district court erred in granting summary judgment on liability because it misconstrued Missouri easement law. This court reviews de novo the district court's summary judgment decision. *Walker v. Hartford Life & Accident Ins. Co.*, 831 F.3d 968, 973 (8th Cir. 2016). It also reviews de novo the district court's interpretation of Missouri law. *Id.* When interpreting Missouri law, this court is "bound by the decisions of the Supreme Court of Missouri. If the Supreme Court of Missouri has not addressed an issue, we must predict how the court would rule, and we follow decisions from the intermediate state courts when they are the best evidence of Missouri law." *Washington v. Countrywide Home Loans, Inc.*, 747 F.3d 955, 957-58 (8th Cir. 2014). Since the parties do not point to any genuine dispute of material fact, the question is whether Sho-Me and Tech's use of the fiber-

---

[1]The district court granted summary judgment to Sho-Me and Tech on easements in the remaining categories.

optic cable for commercial telecommunications makes it liable under Missouri law for trespass and unjust enrichment.

## A.

The landowners argue—and the district court found—that Sho-Me and Tech are liable for trespass under Missouri law for exceeding the scope of Sho-Me's easements. This argument raises two questions. First, did Sho-Me and Tech's use exceed the scope of the easements? And second, if their use did exceed the scope of the easements, was it a trespass?

### 1.

An easement is "a right to use the land for particular purposes." *St. Charles Cty. v. Laclede Gas Co.*, 356 S.W.3d 137, 139 (Mo. banc 2011); *Farmers Drainage Dist. of Ray Cty. v. Sinclair Ref. Co.*, 255 S.W.2d 745, 748 (Mo. 1953) ("An 'easement' is not the complete ownership of land with the right to use it for all lawful purposes perpetually and throughout its entire extent, but it is a right only to one or more particular uses . . . ."). Some easements in Categories 1A-C explicitly refer to a purpose with language like "for the purpose of transmitting electric or other power," "for electrification purposes," "for electrical power utility and related communication purposes," "for the purpose of transmitting and supplying electric energy." Other easements do not explicitly state a "purpose," but do specifically grant the right to construct an electric transmission line.

The parties agree that the easements give Sho-Me the right to install and use fiber-optic cables for internal communications related to supplying electricity. They disagree whether the easements give Sho-Me and Tech the right to use fiber-optic cables installed on the easement land for commercial telecommunications purposes unrelated to supplying electricity.

A Missouri statute, § 523.283 RSMo, governs the use of easements acquired after August 28, 2006, by a utility or REC. It requires "appropriate consideration and damages to the current owner of the property" for "Expanded use of the property beyond that which is described in the instrument of conveyance or the condemnation petition." **§ 523.283.1**. It defines "expanded use" to include "An increased footprint or burden," meaning "a different type of use or a use presenting an unreasonably burdensome impact." **§ 523.283.2(2)**.

The closest case applying § 523.283 is *Carroll Electric Cooperative Corp. v. Lambert*, 403 S.W.3d 637 (Mo. App. 2012). There, an REC petitioned to condemn easements "to erect, operate, survey, maintain . . . one or more electric power transmission and/or distribution line(s) and appurtenant communication lines . . . and to license, permit, or otherwise agree to the joint use or occupancy of the line or system by any other person, association or corporation for electrification or communication purposes . . . ." *Id.* at 641 (alterations in original) (emphasis omitted). Landowners challenged the condemnation petitions. They conceded the REC could install appurtenant communications lines, but argued that the "joint use or occupancy" provision would permit the cooperative to allow a company like Mediacom or Verizon to use the easements for communications purposes. *Id.* at 644. The REC said that while "the joint occupancy provision in these easements allow [sic] other electric cooperatives to buy and sell electricity to each other," it did not allow any non-electricity uses. *Id.* at 644-45. The court agreed with the REC that "any use other than for electricity is an expanded use of the proposed easements that would be prohibited by § 523.283." *Id.* at 645.

Section 523.283 applies only to easements acquired after August 28, 2006, so it does not govern Sho-Me's easements. But *Carroll Electric*'s analysis is instructive because § 523.283 does not change earlier law. The *Carroll Electric* court suggests this by noting, "Landowners do not mention § 523.283, but instead rely on cases involving expanded uses that predate the statute's enactment in 2006." 403 S.W.3d

at 646 n.6, *citing **Eureka Real Estate & Inv. Co. v. S. Real Estate & Fin. Co.***, 200 S.W.2d 328 (Mo. 1947), *and **Ogg v. Mediacom, L.L.C.***, 142 S.W.3d 801 (Mo. App. 2004). *See also* Dale A. Whitman, ***Eminent Domain Reform in Missouri: A Legislative Memoir***, 71 Mo. L. Rev. 721, 753 (2006) (stating that § 523.283 "makes no change in existing law at all").[2] *See generally **Mid-Am. Television Co. v. State Tax Comm'n***, 652 S.W.2d 674, 679 (Mo. banc 1983) (explaining that while a new statute generally changes the existing law, a statute can also simply clarify existing law). Section 523.283 appears to codify the Missouri law on the use of easements held by RECs and utilities.

Pre-2006 Missouri case law, which controls this case, is fully consistent with § 523.283 and *Carroll Electric*. In *Eureka*, a street railway condemned an easement for the "purpose of the railroad 'together with all necessary sidetracks, turnouts, stations, power houses, sheds, yards, poles, wires and other appliances and means necessary and convenient for and appurtenant to the same.'" 200 S.W.2d at 330. The Supreme Court of Missouri explained that this easement allowed the railway's successor to maintain a power line "to furnish power to streetcars." ***Id.*** It held that

---

[2]The Missouri Court of Appeals has relied on Professor Whitman's article to determine the meaning of another part of the 2006 statute. *See **Planned Indus. Expansion Auth. of Kansas City v. Ivanhoe Neighborhood Council***, 316 S.W.3d 418, 426-27 (Mo. App. 2010). A unanimous Supreme Court of Missouri has relied on Whitman's article to hold that a judicial remedy coexists with a remedy created by the 2006 statute. *See **Clay Cty. Realty Co. v. City of Gladstone***, 254 S.W.3d 859, 864, 867-68 (Mo. banc 2008). One supreme court judge quoted Whitman's article to support the conclusion that some language in the 2006 statute "codified" case law. *See **Centene Plaza Redevelopment Corp. v. Mint Props.***, 225 S.W.3d 431, 436 n.2 (Mo. banc 2007) (Stith, J., concurring). In predicting how the Supreme Court of Missouri would decide this issue, Whitman's article is persuasive evidence of the meaning of § 523.283. In any event, this court does not rest its determination that § 523.283 codifies earlier Missouri law solely on Whitman's article. That determination rests largely on the consistency between pre-2006 case law, and § 523.283 and *Carroll Electric*.

the easement did not authorize the railway's successor to permit an electric company to construct an "additional power line" that had "no connection whatever with the electric lines or purposes of the street railway." *Id.* at 332. *Accord **Ogg***, 142 S.W.3d at 808-10 (cable TV company's installation of fiber-optic cables not authorized by electric cooperative's prescriptive easement).

The *Eureka* court quoted from dicta in *St. Louis, I.M. & S. Ry. v. Cape Girardeau Bell Telephone Co.*, 114 S.W. 586 (Mo. App. 1908), addressing an easement use nearly identical to Sho-Me and Tech's: where a "railroad right of way consists of an easement only . . . and the telegraph is constructed thereon under a contract with the railroad company for the purpose of serving the railroad in its operations; but for the purpose, as well, on the part of the telegraph company, to serve the general public as a commercial enterprise." *Id.* at 588. Under those circumstances, "in so far as the telegraph company serves the purpose of the railroad, its occupancy of the right of way easement is not an additional servitude or burden upon the fee of which he may complain" because "such use is a legitimate development for railroad purposes essentially contemplated in the grant of the easement." *Id.* It further explained that use for the additional public-serving telecommunications purpose would not be permitted:

> Nevertheless, in so far as the telegraph or telephone company thus rightfully occupying the right of way serves the general public as a commercial enterprise, distinct from the avocation of the railroad, it constitutes a use of the right of way easement other than for railroad purposes, and it is therefore a servitude not contemplated in the original grant and a burden upon the fee of which the adjacent owner may rightfully complain. It is obvious the transmission of intelligence by means of electricity to all the world who may be willing to pay for the service is not a railroad use, and such service is certainly not contemplated within the grant of the railroad right of way, for it is entirely disassociated therefrom.

-8-

*Id.* *See also* ***Eureka***, 200 S.W.2d at 332 (quoting the first sentence of the above block quotation).

In 1966, the Supreme Court of Missouri again quoted *Cape Girardeau Bell*—this time, a 250-word passage that includes the block quotation above. ***Kansas City v. Ashley***, 406 S.W.2d 584, 592 (Mo. 1966), *quoting* ***Cape Girardeau Bell***, 114 S.W. at 588. The *Ashley* court also said that *Eureka* "relied upon" the *Cape Girardeau Bell* quotation. ***Id.*** *Cape Girardeau Bell*'s rule, repeatedly reaffirmed by the Supreme Court of Missouri, governs this case.

Under *Ashley*, *Eureka*, and *Cape Girardeau Bell*, Sho-Me's easements do not authorize Sho-Me and Tech's use of the fiber-optic cable to serve the general public as a commercial telecommunications enterprise distinct from Sho-Me's electricity business. Sho-Me and Tech's use of the landowners' easements is indistinguishable from the railroad and telegraph company's use of the easement discussed in *Cape Girardeau Bell*. In both cases, a cable can rightfully occupy the easement to serve the purpose authorized in the easement. But that cable cannot also serve the general public for purposes not authorized by the easement. That additional use—here, Tech's use for public-serving commercial telecommunications unrelated to electric transmission—is an expanded use of the kind prohibited by § 523.238 and *Carroll Electric*.

Sho-Me and Tech invoke two additional doctrines—"same general character" and "unlimited reasonable use"—to justify their use. First, they argue that public telecommunications use was permitted because "the owner of land subject to a public easement has no right to insist that the public use remain precisely the same, and if the original use is changed to another of the same general character and no new or other burdens are imposed, . . . the owner is not entitled to additional compensation." ***Riggs v. City of Springfield***, 126 S.W.2d 1144, 1149 (Mo. banc 1939). As a threshold matter, they cite no authority that Sho-Me's easements are "public

-9-

easements." But even assuming *Riggs*'s "same general character" test applies here, it does not authorize Sho-Me and Tech's use. *Riggs* involved a city's appropriation of an easement to use a stream for sewer purposes. *Id.* at 1148. Although the amount of sewage discharged into the stream varied over time, the city's use was always within the bounds of its easement. *See id.* at 1152. *Riggs* supports only the notion that a public easement authorizes an increased *degree* of use so long as it is of the "same general character." Sho-Me and Tech suggest that *Riggs* permits all uses physically similar to those explicitly authorized by their easements. That suggestion is incompatible with *Eureka*, *Ogg*, and *Carroll Electric*—all of which prohibited physically similar or identical uses serving unauthorized purposes.

Second, Sho-Me and Tech assert that their use is authorized because "an easement granted or reserved in general terms without any limitations as to its use, is one of unlimited reasonable use." *Mo. Pub. Serv. Co. v. Argenbright*, 457 S.W.2d 777, 783 (Mo. 1970); *Maasen v. Shaw*, 133 S.W.3d 514, 518 (Mo. App. 2004). Sho-Me can make unlimited reasonable use of the easements, so long as each "easement's use is limited to the purposes for which it was created." *Maasen*, 133 S.W.3d at 519. *See also Illig v. Union Elec. Co.*, 652 F.3d 971, 977-78 (8th Cir. 2011) (explaining that, under Missouri law, an easement can only be used for the purpose for which it was created). Sho-Me and Tech are limited to using the easements for the purpose of electric transmission.

Sho-Me and Tech claim they are not restricted by the "original purpose" of the easements, citing *Henley v. Continental Cablevision*, 692 S.W.2d 825 (Mo. App. 1985). *Henley* held that easements granted in 1922 to construct and operate "lines for telephone and electric light purposes" authorized "the addition of a single coaxial cable . . . for the purpose of transmitting television images." *Id.* at 827-28. The court stated, "The owner of an easement may license or authorize third persons to use its right of way for purposes not inconsistent with the principal use granted." *Id.* at 828. Noting that the cable did not exceed the scope of the intended and authorized use, it

-10-

explained, "The expressed intention" of the plaintiffs' predecessors in granting the easements "was to obtain . . . the benefits of electric power and telephonic communications." *Id.* at 829. Pointing out that the future development of cable television was unforseen when the easements were granted, the court determined that "the intention of plaintiffs' predecessors was the acquisition and continued maintenance of available means of bringing electrical power and communication into the homes of the subdivision." *Id.* *Henley* held that the cable company could use telephone easements, not simply because such use was "reasonable," but because cable television was within the easements' (broadly defined) original purpose. Sho-Me's easements are unlike those in *Henley* and nearly identical to the *Carroll Electric* easements. They do not indicate any intention to allow use for public-serving telecommunications purposes. *See Maasen*, 133 S.W.3d at 519 ("Any doubt concerning an easement's scope should be resolved in favor of the servient owner's free and untrammeled use of the land."). Sho-Me and Tech's use for those purposes exceeds the scope of the easements.

2.

Under Missouri law, "A trespass is a 'direct physical interference with the person or property of another.'" **Hansen v. Gary Naugle Constr. Co.**, 801 S.W.2d 71, 74 (Mo. banc 1990), *quoting* **Mawson v. Vess Beverage Co.**, 173 S.W.2d 606, 613 (Mo. App. 1943). "[I]f an easement holder, while lawfully on the servient land, exceeds his rights under the easement in either the manner or extent of his use, he becomes a trespasser to the extent of the unauthorized use." **Branson W., Inc. v. City of Branson**, 980 S.W.2d 604, 607 (Mo. App. 1998). *See also, e.g.*, **Grider v. Tingle**, 325 S.W.3d 437, 447 (Mo. App. 2010); **Ogg**, 142 S.W.3d at 809; **Maasen**, 133 S.W.3d at 520; **Macios v. Hensley**, 886 S.W.2d 749, 752-53 (Mo. App. 1994). Sho-Me and Tech argue that their use of the easements for telecommunications purposes did not physically interfere with the landowners' property and therefore is not a

-11-

trespass. They say that the landowners complain only of invisible light pulses and can point to no physical invasion of their property.

Sho-Me and Tech miss the fact that the fiber-optic cable is itself on the property, and when they exceed their rights by using it for unauthorized purposes, their use of the cable becomes a trespass. This is precisely what *Cape Girardeau Bell* says. Where a telegraph is used for purposes both authorized and not authorized by the easement, the owner of the land burdened by the easement "may rightfully complain" of uses for purposes not authorized by the easement. *Cape Girardeau Bell*, 144 S.W. at 588. Sho-Me and Tech ask this court to ignore this language. But this court's task is to predict how the Supreme Court of Missouri would rule, and that court has twice quoted *Cape Girardeau Bell*'s language, suggesting it would adopt its approach. *See Ashley*, 406 S.W.2d at 592 (quoting and relying on full passage, albeit for different purposes); *Eureka*, 200 S.W.2d at 332 (quoting and relying on key sentence). *Carroll Electric* provides further evidence of how the Supreme Court of Missouri would rule. It holds that § 523.283 prohibits "use" of an electric transmission easement "other than for electric service." *Carroll Electric*, 403 S.W.3d at 646. Sho-Me and Tech characterize *Carroll Electric* as discussing additional cables, quoting from a single cross-examination question at trial. But *Carroll Electric*'s analysis makes no mention of additional cables. Rather, it refers to "use" of the easements. *Id.* at 644-46.

Sho-Me and Tech also rely on an Eighth Circuit case holding that an excessive use nearly identical to Sho-Me and Tech's was not trespass under Arkansas law. *Int'l Paper Co. v. MCI WorldCom Network Servs., Inc.*, 442 F.3d 633, 636 (8th Cir. 2006). There, a telecommunications company simultaneously used a railroad right-of-way for both internal railroad communications purposes and public-serving commercial telecommunications purposes. The court said it saw "no reason to believe that Arkansas would recognize a claim for damages from an intangible trespass of light signals." *Id.* The decisions of the Missouri courts, discussed above,

indicate Missouri would recognize a claim for trespass where a cable installed on an easement is used for purposes not authorized by the easement. This court is bound to follow those Missouri court decisions, not a prior Eighth Circuit interpretation of Arkansas law. The district court's grant of summary judgment to the landowners on Sho-Me and Tech's trespass liability is affirmed.

B.

The district court found that Sho-Me and Tech's excessive use of the easements makes them liable for unjust enrichment. The parties dispute whether unjust enrichment is an available remedy against entities with eminent domain power that have used property without authorization. The Missouri Court of Appeals recently thoroughly discussed the "body of law" "applicable to the subset of trespass actions filed against utilities otherwise empowered with the right of condemnation." *Sterbenz v. Kansas City Power & Light Co.*, 333 S.W.3d 1, 7-10 (Mo. App. 2010). It summarized the limited remedies available against those entities:

> When an entity otherwise entitled to exercise the power of eminent domain ignores that power and trespasses upon private land, the landowner has an election of remedies. The landowner 'may proceed by way of injunction to restrain the installation; or he may sue in ejectment; or he may avail himself of [section 523.090]; or he may maintain a common law action for damages.'

*Id.* at 7-8 (alteration in original) (footnote omitted) (citations omitted), *quoting Beetschen v. Shell Pipe Line Corp.*, 248 S.W.2d 66, 70 (Mo. App. 1952). If property owners sue for damages, they may sue for trespass or, alternatively, for inverse condemnation. *Id.* at 8. *Sterbenz* does not list unjust enrichment as an available remedy.

-13-

The landowners say that *Sterbenz*'s silence on unjust enrichment is not a rejection. But *Sterbenz* is not just silent. It says that landowners have "an election of remedies" and lists four remedies. It makes little sense to say a plaintiff has an election of four remedies if the plaintiff can elect a fifth. The landowners do not identify any Missouri cases recognizing unjust enrichment as a remedy for unauthorized land use. The closest they come is a case where an employee gave his employer an idea for an invention, which the employer then used without paying him. ***Dewey v. Am. Stair Glide Corp.***, 557 S.W.2d 643, 648-49 (Mo. App. 1977). This does not show that *Sterbenz* overlooked unjust enrichment as a remedy for trespass to real property.

Two other Missouri authorities corroborate *Sterbenz*. First, in *Young v. Home Tel. Co.*, 201 S.W. 635 (Mo. App. 1918), the Missouri Court of Appeals rejected landowners' attempt to sue—"based upon a contract implied by law"—a telephone company that installed unauthorized poles. ***Id.*** at 636. *Young* held that this claim was not allowed:

> It is clear where one takes and occupies the land of another as a trespasser, the law does not imply an agreement on the part of such trespasser to pay for such use and occupation. If it did, then a suit for use and occupation, based merely upon such use and occupation, could be maintained. But, as stated, the rule in our state is that such a suit cannot be maintained unless the relation of landlord and tenant, express or implied, exists between the parties. In other words, there must have been a prior mutual agreement existing between the parties or their privies to pay for such use and occupation, else a suit therefor cannot be maintained.

***Id.*** at 637. The court of appeals assumed the suit was "not one for the use and occupation of land" directly, but rather one based on an implied contract. It held that the case was governed nonetheless by a statute providing, "A landlord may recover a reasonable satisfaction for the use and occupation of any lands or tenements held

-14-

by any person under an agreement not made by deed." *Id.* at 636-37, *quoting* **§ 7886 RSMo** (1909). The *Young* court found that the statute limited suits for "use and occupation" to situations where a landlord-tenant relationship existed between the parties. *Id.* at 636. The same language is still in the Missouri Revised Statutes, now codified at § 441.200, and presumably still bars suits based upon "use and occupation" in the absence of a landlord-tenant relationship. *Young* suggests that the Supreme Court of Missouri would not recognize an unjust-enrichment action for fair market rental value against a trespassing entity with eminent domain power, at least in the absence of a prior agreement. *See **Young v. Sw. Bell Tel. Co.***, 3 S.W.2d 381, 384 (Mo. 1928) (saying "the correctness of [the court of appeals' *Young*] ruling is well supported"). Second, § 528.283 specifically notes that "an action for trespass or expanded use" is available against RECs and utility companies that go beyond the scope of their easements, making no mention of unjust enrichment. **§ 528.283.4**. The district court's grant of summary judgment on unjust-enrichment liability is reversed.

III.

After the district court granted summary judgment on liability for both the trespass and unjust-enrichment claims, the landowners sought damages on the unjust-enrichment claim alone. A jury awarded damages on that claim, and the district court entered judgment for damages on that claim. Since this court now reverses the grant of summary judgment on unjust enrichment, the damages award is vacated. This court need not address the jury instructions or evidentiary rulings.

On remand, the landowners may choose to pursue damages on their trespass claim. *See **Malvino v. Delluniversita***, 840 F.3d 223, 233 (5th Cir. 2016) (permitting plaintiff who elected RICO remedy that was reversed on appeal to pursue common law fraud remedy on remand); ***Shaw v. Raymond***, 196 S.W.3d 655, 662 (Mo. App. 2006) ("When a plaintiff . . . does not have 'two remedies in point of fact,' the fact that he sought a remedy to which he was not entitled does not bar him from pursuing

a remedy to which he is entitled." (quoting ***Pemberton v. Ladue Realty & Constr. Co.***, 224 S.W.2d 383, 385 (Mo.1949))).  If the landowners make that choice, the district court should conduct further proceedings consistent with this opinion.

IV.

Sho-Me and Tech challenge the district court's decision to certify the class of landowners.  This court reviews the district court's class certification decision for abuse of discretion.  ***Ebert v. General Mills, Inc.***, 823 F.3d 472, 477 (8th Cir. 2016).

Sho-Me and Tech argue that this class action is not "manageable" because it will be difficult to determine class membership.  *See* **Fed. R. Civ. P. 23(b)(3)(D)** (explaining that, for Rule 23(b)(3) class actions, "the likely difficulties in managing a class action" are "pertinent to" predominance and superiority).  The district court addressed this argument at length in its order certifying the class, explaining that class members "will file a claim form with a sworn statement identifying the period of their ownership and attaching a deed."  Sho-Me and Tech do not specify how this process is unmanageable, much less how it is so unmanageable that the district court abused its discretion in certifying the class.

Sho-Me and Tech assert that they could raise an affirmative defense—landowner consent to their cable use—that should be individually investigated and adjudicated, making class certification inappropriate.  "While the existence of individual defenses may be important in a court's decision to certify a class, the relevance of such defenses must be subjected to the same rigorous inquiry as plaintiffs' claims."  ***In re Zurn Pex Plumbing Prod. Liab. Litig.***, 644 F.3d 604, 619 (8th Cir. 2011) (citation omitted).  Sho-Me and Tech point to no evidence that even one class member consented to their cable use.  Their unsupported allegation of individual consent questions does not undercut the district court's finding that common questions predominate over individual ones.

Finally, Sho-Me and Tech contend that the need for individualized damages calculations prohibits class certification. Since this court has vacated the damages award, the nature of a hypothetical future damages award does not render class certification improper. *See **Tyson Foods, Inc. v. Bouaphakeo***, 136 S. Ct. 1036, 1049-50 (2016) (declining to decertify class on basis of damages issues not yet resolved by district court). The district court did not abuse its discretion in certifying the class.

\* \* \* \* \* \* \*

The judgment is affirmed in part, reversed in part, vacated in part, and remanded for proceedings consistent with this opinion.

_____